THE STATE ex inf. DAVID A. THOMPSON, Prosecuting Attorney, ex rel. THOMAS PUGH et al., Appellants, v. ARCH BRIGHT et al.

**Division Two, April 9, 1923.**

1. **APPELLATE JURISDICTION: By Stipulation: Constitutional Question.** Appellate jurisdiction cannot be conferred by stipulation of parties that a constitutional question is involved. Neither has a court of appeals power to transfer a case to the Supreme Court on such stipulation when no constitutional question is involved.

2. ————: **Consolidated School District: Title to Office.** A proceeding by *quo warranto* attacking the validity of the organization of a consolidated school district and to oust respondents as directors involves "the title to an office under this State," within the meaning of Section 12 of Article 6 of the Constitution, and the Supreme Court has jurisdiction of an appeal from the judgment of the circuit court denying the writ of ouster.

3. **APPELLATE PRACTICE: Quo Warranto: Consolidated School District: Action at Law.** A proceeding of *quo warranto* attacking the validity of the organization of a consolidated school district is an action at law, and the findings of fact, by the trial court sitting as a jury, if supported by substantial evidence, are binding on the Supreme Court on appeal.

(335)

4. ——: ——: ——: ——: **Weight of Evidence.** In an action at law it is not the province of the appellate court to weigh the evidence. If the findings of the trial court are supported by substantial evidence, the question whether they were supported by the greater weight of the evidence is not for consideration on appeal.

5. **CONSOLIDATED SCHOOL DISTRICT: Visiting Community.** If the county superintendent is familiar with the conditions and needs of the community by reason of the previous discharge of his ordinary duties and has advised with those residing in the community, his failure to visit the community after the filing of a petition for the formation of a consolidated school district and before fixing the boundaries cannot defeat its organization.

6. ——: **Notice of Special Meeting.** The posting of ten notices in public places within the proposed consolidated school district at least fifteen days before the date fixed for the special meeting, stating the time and place of the meeting and that its purpose will be (1) "to organize a consolidated school district in this community, with boundaries as laid out on the plat (e) posted" and (2) "to elect six school directors for said consolidated school district, two for three years, two for two years, and two for one year," constitutes sufficient notice.

7. ——: **Plats: Boundary Between Two Counties.** Where the proposed consolidated school district is to embrace territory in two counties, and the line between two ranges constitutes the boundary line between the counties, plats, properly posted, showing the area comprised in two townships and those ranges, and so drawn as to show whether or not any given twenty-acre tract is included within the proposed boundaries of the district, are sufficient, although they do not show the line between the counties.

8. ——: ——: **Authentication.** The Act of 1913 did not require that the plats showing the lands to be included in the proposed consolidated school district shall be authenticated by a public official. If five plats were posted in connection with the notices calling a special meeting and reciting its purpose, they were sufficient without the approval or signature of the county superintendent, where the meeting was held before the Act of 1917 went into effect.

9. ——: ——: **Presentation to Voters at Special Meeting.** The Act of 1913 did not require the plat of the proposed consolidated school district to be presented to the voters at the special meeting called to vote upon its formation.

10. ——: **Reasonable Time to Vote.** A finding by the trial court sitting as a jury that a legal voter did not appear at the special

meeting until after the ballots on the question of the organization of a consolidated school district had been cast and counted and the result announced, where supported by substantial evidence, will not be disturbed on appeal; and in the face of such finding it will not be ruled that the polls were not held open a reasonable length of time or that the said voter was not given a reasonable opportunity to vote.

11. ———: **Illegal Voters: Presumption.** The organization of the consolidated school district will not be held to have been illegal upon a showing that three votes were cast by men residing outside of the proposed district, where there is no contention that they knowingly cast illegal votes, but it is admitted that they voted in ignorance of the true boundaries, and there is no showing of how they voted, whether for or against organization, although the day was stormy and if all three votes were shown to have been cast against organization there would not have been a majority for organization. Nor can a presumption be indulged that they voted in favor of organization from the fact that some of them signed the petition to initiate the proceeding for the formation of the district.

12. ———: **Method of Voting.** Where the evidence at the trial was substantial that each voter advanced to the front of the chairman of the special meeting, and deposited his vote in a ballot box used for that purpose, it will not be held on appeal that the provision of the statute requiring such method of voting on the question of the formation of a consolidated school district was not complied with.

13. ———: **Words on Ballots.** The statute (Sec. 10865, R. S. 1909), pertaining to the organization of a consolidated school district and for a special meeting of legal voters to vote on the question, required that those voting for organization should have the words "for organization" and those voting against organization the words "against organization" written or printed on their ballots. The words "for organization" and "against organization" were written on the blackboard, and voters instructed to mark their ballots accordingly, and some were marked "for" and some "against," and some "for consolidation" and some "against consolidation." The ballots were counted according to the manifest intention of the voters. *Held, first,* that there is no provision of the law that ballots marked simply "for" or "against" shall not be counted, and, *second,* it is not to be expected that voters in a rural community shall be experts in legal matters, and a substantial compliance with the law is sufficient.

14. ———: **Certification: Typewritten Signatures.** Typewritten certificates of the proceedings at the special meeting held for the

purpose of organizing a consolidated school district, which truly recite the proceedings as they actually occurred, are sufficient, although signed in typewriting, instead of with pen and ink, by the chairman and secretary. The statute does not require the certificate to be signed in the handwriting of these officers, and the same considerations which make sufficient a substantial compliance with the statute by voters in their method of voting should be applied to the certification of the proceedings.

15. ———: ———: **Outside of District.** The certification of the proceedings made at a bank outside of the district is not for that reason invalid or insufficient.

16. ———: ———: **On File: Deposit by Mail.** The Act of 1913 did not require the certificate of the proceedings of the organization of a consolidated school district to be on file in the office of the county superintendent of schools; evidence that the certificates were properly addressed to the proper officers and properly deposited in the United States mails is sufficient to justify a finding that the proceedings were sufficiently certified to complete the organization.

17. ———: **Disorganization.** On the question of the validity of the organization of a consolidated school district, testimony concerning the result of an election held three months later for the purpose of disorganization is not competent.

## Appeal from Ray Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Clark, Milligan & Garner, M. M. Milligan,* and *Jacobs & Henderson* for appellant.

(1) The court erred in not finding the issues for the relators, because the greater weight of the evidence is in favor of the relators and against the respondents. (2) The judgment is against the weight of the evidence, because the relators have shown, conclusively, that the election was invalid, not held according to law, and the irregularities were such as to cause the result of the election to be uncertain, and that the result would have been different if the election had been held according to law. State ex rel. v. Siebert, 116 Mo. 415; Hall v. Schoen-

acka, 128 Mo. 661.   (a)   Because the plats and notices were not legal and proper and did not show the boundaries of the consolidated district, and were not intelligible so that the owners of property within the proposed district could ascertain whether or not their lands were within the proposed district.   State ex rel. v. Courtright, 205 S. W. 248; State ex rel. v. Wright, 194 S. W. 35. (b)   Because the plats so filed were not authenticated and bore no official character so that the voters of said district could know the plat was of an official character and posted by authority of some public official.   State ex rel. v. Courtright, 205 S. W. 248.   (c)   Because the plat was not presented to the voters at said meeting, in compliance with the law.   (d)   Because the polls in said district were not held open a reasonable length of time so as to give the voters in said district a reasonable length of time in which to vote.   (e)   Because a qualified voter presented himself at said school meeting fifteen minutes after the meeting was called to order, and desired to vote, but was precluded therefrom by the chairman; and if said voter had voted the results of the election would have been different.   (f)   Because there were three illegal votes cast at said meeting by men who resided outside of the boundary lines of the proposed district.   (g)   Because some of the illegal voters who voted, signed the petition asking that said matter be voted upon, about thirty days prior to voting at said election, which would be indicative of the fact that they voted for consolidation.   (h)   Because relators proved by a preponderance of evidence that said election was illegally held; that the voters did not pass to the front to cast their ballot; that they did not put on slips of paper "For Organization" or "Against Organization," or "For Consolidation" or "Against Consolidation," but in some instances put only the words "For" or "Against."   That their ballots were taken up by tellers around the room, and there is no way of knowing what the true vote or the true sentiment of the people was at said meeting.   O'Laughlin v. City of Kirkwood, 107 Mo. App. 302; State ex rel. Marbut v. Potter, 191 S. W. 57;

State ex rel. v. McCann, 88 Mo. 386. (3) There was no proper certificate of the meeting to the county superintendent of the respective counties or to the county clerk of the respective counties. (4) The board held its meeting outside the district, which was illegal, and all acts of said board outside said district were illegal and void. The board met at Hardin, and organized, which was outside the district, and directed that their names be typewritten to a proper certificate of the results of said election and the meeting of said voters at said time and place, which matters and things were typewritten by a stenographer in the bank, outside of the district, and the names thereto typewritten by said stenographer mailed to the county clerks of the different counties, and there was no certificate on file in the office of the superintendent of schools of Carroll County, Missouri, although the statutes prescribe that the chairman or secretary must certify to the superintendent of schools at Carroll County the meeting and results thereof. State ex rel. v. Courtright, 205 S. W. 248. (5) That the court erred in finding that the election was legally held, thereby showing that the sentiment of the people was for the consolidated school district, when in truth and fact, the election held three months thereafter indicated by a great majority, that they were not for the school district as proposed. (6) The court erred in holding as immaterial the results of the election held three months after the election for consolidation.

*Lozier & Morris* and *Lavelock & Kirkpatrick* for respondents.

(1) This is an action at law. It was submitted to the court, without a jury; no declarations of law were given or requested, neither did appellants request a finding as to the facts. Under such circumstances, this court is precluded from reviewing the evidence, and the judgment of the trial court should be affirmed. Union Trust Co. v. Hill, 283 Mo. 278, 282; Wiley v. Harlow, 274

Mo. 170, 175; St. Louis v. Railroad, 248 Mo. 10, 25; Nickey v. Leader, 235 Mo. 30, 43; Bond & Stock Co. v. Houck, 213 Mo. 416, 426; Jordan v. Davis, 172 Mo. 599, 608; Hanenkratt v. Broughham, 164 Mo. App. 108; State ex rel. Fox v. Alt, 26 Mo. App. 674; State ex inf. v. Hall, 228 S. W. 1057; Cahill-Swift Mfg. Co. v. Goodnow Realty & Inv. Co., 204 S. W. 816. (2) This is a proceeding by *quo warranto*, and not a suit in equity. In view of the fact that there were no instructions, the findings of the trial court, which were supported by substantial evidence, are binding on this court. State ex rel. v. Wright, 270 Mo. 376, 387; State ex rel. v. People's Ice Co., 246 Mo. 168, 200; Guaranty & Surety Co. v. Drennon, 181 Mo. App. 198, 202; State ex rel. v. Alt, 26 Mo. App. 674; State ex inf. v. Hall, 228 S. W. 1057. (3) A writ of *quo warranto* is not a writ of correction or a writ of review. The petition of the forty-seven resident, tax-paying, qualified voters of proposed consolidated school district, with the action of the county superintendent thereon, gave the qualified voters at the special meeting jurisdiction to act in the premises, and the action of the voters then and there assembled, is final, and cannot be reviewed by *quo warranto*. State ex rel. v. Job, 205 Mo. 32; State ex inf. v. Fleming, 158 Mo. 562; School District v. Chappel, 155 Mo. App. 510; State ex rel. v. Sexton, 151 Mo. App. 517, 523; State ex rel. v. Gibson, 78 Mo. App. 170; State ex inf. v. Albany Drainage District, 234 S. W. 343. (4) This being an action by *quo warranto*, neither the legality of votes cast, nor the qualifications of voters at said special meeting, can be here inquired into, and even though this could be done, relators would have been compelled to notify respondents of their intention so to do, and furnish them with a list of the voters whose qualifications they purposed to call in question. State ex inf. v. Heffernan, 243 Mo. 442; State ex rel. Attorney-General v. Mason, 77 Mo. 189, 191; State ex rel. v. Townsley, 56 Mo. 107, 112. (5) Neither a strict nor a technical construction should be placed upon statutes authorizing the formation, organization or incorporation of consolidated

school districts.   A substantial compliance with such statutes is all the law requires.   State ex inf. v. Smith, 271 Mo. 168, 177; State ex inf. v. Clardy, 267 Mo. 371, 384; State ex inf. v. Jones, 266 Mo. 191, 201; State ex rel. v. Sims, 201 S. W. 910, 911; School Dist. v. Chappel, 155 Mo. App. 498, 510.   (6)   Public Schools are largely controlled by individuals unversed in the law, and not accustomed to legal technicalities, and for this reason, the courts, in applying and interpreting statutes pertaining to schools and school districts, never resort to or indulge in strict or technical requirements, but construe such statutes liberally, always upholding them, where it can be done without violating legal requirements.   State ex inf. v. Morgan, 268 Mo. 279; State ex inf. v. Jones, 266 Mo. 191, 201; State ex rel. v. Andrae, 216 Mo. 617, 637; State ex rel. v. Job, 205 Mo. 1, 34; School District v. School District, 181 Mo. App. 583, 589.   (7)   The school law governing elections in the formation of consolidated school districts, requires certain things to be done at a particular time and in a particular manner, but the statute does not say that compliance therewith is necessary to the validity of the election, therefore such statute is directory, and even though there might have been some irregularities in the proceedings of said special meeting, such irregularities did not affect the merits of the election or render the same invalid.   Breuninger v. Hill, 277 Mo. 239, 252; State ex rel. v. Gordon, 242 Mo. 624; State ex rel. v. Hackman, 273 Mo. 670, 700; Ex parte Harvey Leach, 149 Mo. App. 317, 329; Horsefall v. School District, 143 Mo. App. 541; State ex rel. v. Cloud, 192 Mo. App. 322; Sanders v. Lacks, 142 Mo. 255, 263; State v. Swearingen, 128 Mo. App. 605, 613.   (8)   Irregularities or neglect of duty by officers in charge of an election, over whose conduct the voters have no control, do not, in the absence of a statute making such acts fatally defective, render such election void or illegal.   Nance v. Kearbey, 251 Mo. 374, 383; Gass v. Evans, 244 Mo. 329, 353; Hehl v. Guion, 155 Mo. 76, 82; Sanders v. Lacks, 142 Mo. 255, 262; Hope v. Flentge, 140 Mo. 405; Bowers v. Smith,

111 Mo. 61.   (9)   The courts have, in some instances, held that neglect of election officers would render the election invalid, but this is true only in cases where the statute expressly so declared.   West v. Ross, 23 Mo. 350; Ledbetter v. Hall, 62 Mo. 422; Gumm v. Hubbard, 97 Mo. 311; Hehl v. Guion, 155 Mo. 76, 85.   (10)   The evidence of respondents was sufficiently convincing to satisfy the trial court, that the averments in the answer were true, and even though this evidence was, in some respects, flatly contradicted by witnesses for relators, that was a matter for the trial court, and will not justify a reversal of this cause.   Mann v. Weiss, 185 Mo. App. 335, 344; Joyce v. St. Paul Fire & Marine Ins. Co., 211 S. W. 390. (11)   The action of the superintendent for Ray County, in ascertaining, fixing, determining and locating the boundaries of proposed consolidated school district, was not judicial, but ministerial and discretionary, and in the absence of an allegation by relators that the superintendent abused that discretion his conduct, in that respect, is not a matter for review.   State ex rel. v. Consolidated School Dist., 234 S. W. 56; State ex rel. v. Glaves, 268 Mo. 100. (12) The notices posted by the county superintendent complied with the requirements of the statutes and were in all respects sufficient.   State ex rel. v. Glaves, 268 Mo. 100; State ex rel. v. Cloud, 192 Mo. App. 324.   (13)   The statute does not require the county superintendent to sign either the posted or filed plats. The plats herein were legally sufficient.   State ex inf. v. Smith, 271 Mo. 168, 173; State ex rel. v. Wright, 270 Mo. 376, 383; State ex inf. v. Hall, 228 S. W. 1056; State ex rel. v. Stouffer, 197 S. W. 250.   (14)   The plats met all the demands of the statute; they disclosed the sections and subdivisions of sections, and were sufficiently definite to inform each individual as to whether he resided within the boundaries of said proposed district.   State ex inf. v. Smith, 271 Mo. 168, 177; State ex rel. v. Wright, 270 Mo. 376, 385; State ex rel. v. Glaves, 268 Mo. 108; State ex rel. v. Stouffer, 197 S. W. 251.   (15)   Some of the voters at said special meeting may have used a ballot

not in exact conformity to the requirements of the statute, but such ballots constituted a substantial compliance therewith, and by reason thereof there was no illegality in the use of such ballots. State ex rel. v. Hackman, 273 Mo. 670, 699; Sanders v. Lacks, 142 Mo. 255, 263; Horsefall v. School District, 143 Mo. App. 545; State ex rel. v. Stouffer, 197 S. W. 251. (16) At said special meeting, no mandatory provision of the statute was either violated or disregarded. Every voter was accorded an opportunity to cast an uninfluenced ballot; each was allowed the privilege of giving a free and untrameled expression to his will, and by reason of these facts said election was in all respects valid. State ex rel. v. Gordon, 242 Mo. 615, 624; State ex rel. v. Cloud, 192 Mo. App. 324; Horsefall v. School District, 143 Mo. App. 545. (17) The proceedings of said special meeting were properly certified to the county clerks and county superintendents of Ray and Carroll counties. State ex rel. v. Glaves, 268 Mo. 107; State ex inf. v. Jones, 266 Mo. 199.

DAVID E. BLAIR, J.—This is a proceeding in *quo warranto* in the Circuit Court of Ray County, attacking the validity of the proceedings attending the organization of Consolidated School District No. 2 of Ray and Carroll Counties, and seeking to oust respondents as directors of such consolidated school district. From a judgment sustaining the validity of such proceedings and denying the ouster, relators have appealed.

The appeal was granted to the Kansas City Court of Appeals and that court transferred the case to this court. Counsel for relators and respondents filed a stipulation

Appellate Jurisdiction.

in the Court of Appeals agreeing that the case be transferred to this court, stating in such stipulation: "It being mutually understood, herein, that a constitutional question is involved." The mandate of the Court of Appeals was based on such stipulation. There is no constitutional question involved, as a careful examination of the record discloses. As said by FARIS, J., in the case of In re Letcher, 269 Mo. at page

147: "We are by law the keepers of our own jurisdiction and we have the right and it is our duty to determine this question for ourselves as the initial question up for decision in any case which comes before us." The parties attempted to confer jurisdiction upon this court by stipulation. Such stipulation was utterly futile for that purpose, and did not authorize such transfer to this court. As we said in Estate of Bennett v. Bennett, 243 S. W. at page 769; "Parties to cases cannot confer appellate jurisdiction upon this court by agreement."

However, an examination of the record discloses that the appeal should have been granted to this court in the first instance because "the title to an office under this State" is involved. [Article VI, sec. 12, Mo. Constitution; State ex inf. Sutton v. Fasse, 189 Mo. 532; State ex rel. v. Stone, 152 Mo. 202; State ex rel. v. Hill, 152 Mo. 234; State ex rel. West v. Consolidated School District No. 2, 234 S. W. 54.] The foregoing cases hold that the office of school director is an "office under this State" within the meaning of Article VI, Section 12 of the Constitution. Since the case falls within our appropriate appellate jurisdiction, it is our duty to dispose of the case regardless of the grounds upon which it was transferred to this court.

*Title to Office.*

The validity of the proceedings attending the organization of the consolidated school district and the right of respondents to hold their offices as directors of such district is challenged in the petition upon the following grounds:

"Because proper and legal notices of said special meeting to vote on the proposition to form said proposed consolidated district were not posted according to law; because said county superintendent did not post proper and legal plats of said proposed consolidated district as required by law; because said county superintendent did not file a proper and legal plat of said proposed consolidated district with the county clerks of said Ray and Carroll Counties as required by law; because the special meeting at which said proposition was attempted to be voted on was not legally organized and said proposition

was not legally submitted; because the proceedings of said special meeting were not properly and legally certified to the county clerks and to the county superintendents of schools of the counties affected, because the petition asking for said special meeting was not filed with the county superintendent of schools in the county in which a majority of the petitioners resided, to-wit, Ray County; because proper and legal copies of said petition and of said plat were not filed with the county clerks of each county, to-wit, Ray and Carroll, from which territory was proposed to be taken.

"Your petitioner further states to the court that at the purported election that your petitioner, Rust, who was then and there a qualified voter was denied the right and privilege of franchise and voting. That he arrived at the place of voting about five or ten minutes after two o'clock p. m. That the votes at that time had not been counted nor had not been finally collected. That he tendered his vote, expressed his desire to vote. That he was a qualified voter, and the defendants well knew that he was a qualified voter, and well knew that he was interested in the outcome of said election. That notwithstandnig this knowledge on the part of the defendants they then and there refused the petitioner, Rust, the right to vote and did not accept his ballot and the same was not counted.

"Your petitioner further states that if he had been permitted to vote and cast his ballot he would have cast his ballot 'Against Consolidation.' That thereafter when the result of the said vote was tabulated, the result was fifty-two for consolidation and fifty-one against consolidation.

"Your petitioner desires to show the court that had he been permitted to vote the result of the said election would have been a tie, and there would have been no so-called consolidated district formed. The directors were illegally elected and there is nothing in the records to indicate how the ballot stood for the respective directors who purported to hold the office of director.

"Your petitioner further desires to show that there is nothing in the petition filed with the county superintendent of schools to indicate that there are at least two hundred children of school age or that there is at least twelve square miles of territory embraced in the district proposed.

"That the county superintendent of schools did not in truth and in fact visit the district and really investigate the needs of the community. That all the information had and received on that subject by the county superintendent of schools was made and provided by the parties interested in that consolidation. That there were no proper legal notices posted. That there were no proper maps or plats posted. That the maps or plats which were purported to have been posted and purported to cover the territory embraced were not properly authenticated. They were not properly certified. That they bore no official title or the names of any official. That there was nothing about said plats to inform the people resident of said district. That the same were posted by authority of law to embrace the properties purported to have been covered, and there was nothing about said plats that would indicate that they had anything to do with the purported and expected meeting for the purpose of voting on the consolidation of the district for the purpose of establishing a high school."

Before stating the facts in the case it is well to understand the province of this court with respect to the facts found by the trial court. The proceeding is in *quo warranto*. It is a suit at law. The findings of the trial court on questions of fact, if supported by substantial evidence, are binding on this court. [State ex rel. v. Wright, 270 Mo. 376, l. c. 387; State ex rel. v. Ice Co., 246 Mo. 168, l. c. 200; State ex inf. v. Hall, 228 S. W. 1055, l. c. 1057.] The case was tried by the court without a jury. No declarations of law were asked or given. Hence, we are bound by the findings of the trial court, where they are supported by substantial evidence.

It is not necessary to make a preliminary statement of the facts at length, since such facts will necessarily

'be more or less discussed in the opinion. The trial judge incorporated his findings of fact in the judgment which he rendered. They go into great length and detail. He found every fact at issue in favor of respondents, and fully sustained the validity of the proceedings and the right of respondents to hold their offices. He recited each and every step in the proceedings, from the filing of the petition requesting the county superintendent of schools to call a special school meeting, down to the election of some of the respondents as school directors at an election subsequent to the organization meeting.

I. It is contended that the court erred in finding for respondents because the greater weight of the evidence is in favor of relators and against respondents. Since this is an action at law, it is not our province to weigh the evidence. [See cases above cited.]

Weight of Evidence.

II. Relators contend that the county superintendent of schools of Ray County did not visit the community and really investigate its needs. The trial court found to the contrary. The record shows that such superintendent advised with persons in the districts included in the consolidated district and that he was familiar with conditions therein. If he was familiar with the conditions and needs of the community by reason of the previous discharge of the ordinary duties of his office and had advised with those residing in the district, his failure, if he did so fail, to visit the community after the filing of the petition and before fixing the boundaries of the consolidated district and taking the other steps devolving upon him, cannot defeat the organization. The only purpose of the statutory requirement is to familiarize the superintendent with the needs of the community. The record and the finding of the trial court determine the point against relators.

Visiting Community.

III. The sufficiency of the notice is challenged, both as to form and as to posting. The validity of the pro-

ceedings is to be tested by the Laws of 1913, page 721.

**Notice.** That act required the posting of ten notices in public places within the proposed district, stating the time, place and purpose of the meeting to act upon the proposal for consolidation. The trial court found, and the evidence tends to show, that the county school superintendent complied fully with this requirement. Not less than ten such notices, signed by the superintendent of schools of Ray County, the county containing the larger portion of said consolidated district, were posted at public places within such proposed district at least fifteen days before the date fixed for the special school meeting. A copy of such notice was put in evidence. It fixed the place, the date and the hour of the meeting and stated that the following things were to be considered:

"First: To organize a Consolidated School District in this Community, with boundaries as laid out on the plat(e) posted.

"Second: To elect six school directors for said Consolidated School District, two for three years, two for two years, and two for one year."

A mere reading of the notice and a comparison of it with the requirements of the statute are sufficient to show that the contention is without merit.

IV.  The sufficiency of the plat of the proposed consolidated district is also challenged. The evidence tends to show and the trial court found that five plats of the proposed consolidated district were posted within **Plats.** such district for fifteen days before said special district meeting. Such plats were posted at the same places at which five of the notices of the meeting were posted.

(a)  It is first contended that said plats did not show the boundaries of the proposed district and were not intelligible. It is true the plat did not show the line **Line Between Counties.** between Ray and Carroll counties. It did show that it was a plat of proposed Consolidated District No. 2 of Ray and Carroll

counties. It was drawn on a sheet of paper showing the area comprised in townships 52 and 53 and ranges 25 and 26. Sections 9300 and 9328, Revised Statutes 1919 (Secs. 3517 and 3545, R. S. 1909) show that the range line between ranges 25 and 26 constitutes the boundary between Carroll and Ray counties. The plat was so drawn as readily to show whether or not any given twenty-acre tract was included within the proposed district. An examination of the plat as posted would have revealed to any landowner whether all or any part of his land was included in the district. The plat was clearly sufficient in its description of boundaries and the lands included. It is much more complete than the plats held to be suffi-- cient by Division One of this court in State ex inf. Mc-Allister v. Hall, supra, l. c. 1056, and by this Division in State ex rel. v. Wright, supra, l. c. 383.

(b) The plat is attacked on the ground that it was not authenticated and bore no official character, so that the voters could not know that such plat was official or posted by authority of a public official. No such requirement is found in the Act of 1913. It simply provides that the county superintendent shall post five plats of the proposed consolidated district within said district at least fifteen days prior to the date of the special meeting. In each instance where the plat was posted it was in connection with a notice calling the special meeting and reciting the purpose of such meeting. Said act does not require that the plat be signed or authenticated by any one. It is to be noted that the Act of 1913 was amended by the Laws of 1917, at page 509, by adding a proviso that all plats or notices posted as required in this section shall not be filed or posted unless approved and signed by the county superintendents of all counties in which any part of such proposed district shall lie. The act was not approved until March 27, 1917, which was nearly two months after the special school meeting was held. Such amendment by the General Assembly in 1917 indicates a legisative construction

*Authentication.*

that the existing section required no such signatures or approval. This point must be decided against relators.

(c) It is contended that the plat was not presented to the voters at said meeting in compliance with the law. The Act of 1913 required that the proceedings be held in accordance with Section 10865, Revised Statutes 1909, and said section did not require the plat of the proposed consolidated district to be exhibited at the school meeting held to vote on the proposition. Nor is any such requirement found in the 1913 Act. In any event, the evidence on the part of respondents tends to show that the plat was exhibited at the meeting and the trial court so found. The point is ruled against the relators.

*Presentation to Voters.*

V. Relators contend that the polls were not held open a reasonable length of time so as to give the voters in said district a reasonable time in which to vote, and particularly that a qualified voter named Fleet Rust, one of the relators, presented himself before the ballots were deposited or counted, and was refused the right to vote. The evidence on the part of respondents tends to show that said Fleet Rust did not appear at the meeting until after the ballots cast in the election upon the question of organization had been counted and the result announced; while the evidence on the part of the relators tends to show the contrary state of facts and that he did present himself in due time and was arbitrarily disqualified. On this issue the trial judge found against the contention of relators and we are bound by his findings. It may be interesting to note in this connection that said Fleet Rust testified as a witness and was asked this question: "Q. Can you tell the court whether or not the result of the meeting had been announced at that time? [Time of entry into the meeting.] A. I cannot say." It also appeared that the father of Fleet Rust, who opposed the consolidation and made a speech against it in the meeting, announced that his son was too late when he offered to vote. The finding

*Late Voter.*

of the trial court, therefore, is based upon most sub-
stantial evidence.

VI.   The special school meeting was held on Feb-
ruary 2, 1917, and the evidence tends to show that it was
a cold, stormy day and that some of the residents of the
district who were qualified voters had to travel four or
five miles to reach Union School House where the
meeting was held.   There is no question that the
proposed district contained the requisite number
of children of school age and exceeded the minimum area.
[Laws 1913, p. 722.]   On account of the day being cold
and stormy the voters in attendance at the school meeting
numbered only one hundred and three, fifty-two of whom
voted for organization and fifty-one against.   In this
situation the contention of relators that three illegal
votes were cast by men residing outside of the proposed
district is of some importance.   It is not contended that
these voters knowingly cast illegal votes, but that such
votes were cast in ignorance of the true boundaries of
the district.   There is no showing as to how these three
illegal votes were cast, whether for or against organiza-
tion.   One voter who lived outside of the district was
called as a witness and it developed that his vote was
cast against organization.   It appears that some of the
three voters residing outside the proposed district signed
the petition to the county superintendent to initiate the
proceedings.   However, no presumption that they voted
at the meeting in favor of organization can be indulged
from the fact that they signed such petition.

VII.   (a)   Relators contend that there was no com-
pliance with the provisions of the law that "each person
desiring to vote shall advance to the front of the chair-
man and deposit his ballot in a box to be used for that
purpose."   Here also a sharp issue of fact de-
veloped.   A number of witnesses testified on
each side of the question.   Some of relators'
witnesses testified that the ballots were collected by the

*Marginal notes:* Illegal Voters. — Depositing Ballot.

tellers in a hat or cap and by them taken to the chairman's table and there counted. A number of witnesses on behalf of respondents testified that the voters were required to pass to the front of the building and deposit their ballots in a box. Two or three of respondents' witnesses suggested that some confusion might have arisen because the vote for school directors was taken up in hats and carried to the front of the building. No contention is made of ballot-box stuffing or that the result announced did not truly express the sentiment of those who participated in the election. On this question the trial court found that the qualified voters advanced to the table located in front of the chairman and deposited their ballots in a box on said table and that each voter deposited his ballot. This finding of the court, based on substantial evidence as it is, determines the controversy adversely to relators and we have no power to interfere with such finding.

(b) Section 10865, Revised Statutes 1909, required that those voting for organization should have written or printed on their ballots the words "for organization" and those voting against the organization should have the words "against organization" on their ballots.

**Words on Ballots.** The trial court found that the ballots were so written. The evidence indicates some doubt upon the question of whether every ballot was so written. It appeared that the words. "for organization" and "against organization" were written on the blackboard and voters instructed to mark their ballots in that way. However, it appeared that some of the ballots were marked "for" and some "against" and probably some marked "for consolidation" and some "against consolidation." Even if such ballots were not all marked as required by the said section of the statute, there is no provision in the statute that such ballots shall not be counted unless they are so marked. It is not to be expected that the qualified voters residing in a country community shall be lawyers or experts in legal matters, and this court has held that a substantial compliance with the requirements

298 Mo.—23

of the statute is sufficient. [State ex inf. v. Morgan, 268 Mo. l. c. 279; State ex rel. v. Job, 205 Mo. l. c. 34; State ex rel. v. Andrae, 216 Mo. l. c. 637.]

As we understand the record there is not the slightest suggestion that any ballot was not counted as cast or that any ballot was not sufficiently marked so that it was not counted in accordance with the intention of the person casting it. The contention is overruled.

VIII. Another contention is that there was no proper certification of the proceedings of the meeting to the county superintendents or the county clerks of the respective counties. On this point the trial court found "that the proceedings of said special meeting were duly certified by the chairman and secretary to the county clerk and the county superintendent of public schools in and for Ray County." The same finding was made as to the county superintendent and county clerk of Carroll County. The Act of 1913 provided that the proceedings of the meeting should be certified to the county clerks and county superintendents of schools of the counties affected. The evidence showed that the proceedings were written in typewriting and the names of the chairman and secretary were signed in typewriting and that these typewritten papers were filed in the respective offices. No contention is made that the proceedings as thus certified did not truly relate the proceedings as they actually occurred, and since there is no requirement in the statute that such proceedings should be signed in the handwriting of the officers of the meeting, we see no reason why the certification should not be regarded as sufficient. The same considerations as to the expert knowledge of the voters likely to be in a meeting of this sort, apply to the certification of proceedings as apply to the preparation of ballots discussed above.

*Certification: Typewritten Signatures.*

(a) The relators contend that the proceedings were not properly certified, because certified to at a bank at

Hardin, Missouri, which was outside of the district. We are cited to no authority requiring said certification to be made at a meeting held inside of the district.

(b)    Relators also contend that there is no certificate of the proceedings of the meeting on file in the office of the superintendent of schools of Carroll County. It will be noted that the Act of 1913 makes no mention of the requirement that the certified proceedings be on file, but simply requires that they be certified to the clerk and superintendent. The evidence shows that they were properly deposited in the United States mail, addressed to the respective officers, and this evidence is 'sufficient to justify the finding of the trial court that the proceedings were sufficiently certified to complete the organization of the district properly.

On File.

IX.    Relators finally contend that the court erred in refusing to admit in evidence testimony as to the result of an election held three months after the organization meeting for the purpose of disorganization, under the provisions of Section 10870, Revised Statutes 1909, at which it is contended some one hundred and thirteen votes were cast for disorganization to twenty-eight against disorganization. We can conceive of no possible bearing the result of such election could have upon the validity of an election held for the purpose of organizing the district. It is conceivable that the sentiment might change in the district and even though a majority of the voters of the proposed district were in fact opposed to the organization of the consolidated district at the time it was organized, yet they had notice of the meeting and did not appear to vote their sentiments and the will of the majority present at that meeting, as expressed in the election legally called and held, is sufficient to accomplish the organization. No error was committed by the trial court in excluding this testimony.

Disorganization.

X.    We have carefully considered all the points assigned by relators as error, and are satisfied that the elec-

tion was legally held, after due and timely notice and posting of proper plats, and that the proceedings at the special school meeting were regular and that the respondents were duly elected and qualified as directors of such district, possess all the legal qualifications of directors and are entitled to exercise the functions of such office. Most of the issues in the case are issues of fact, in the decision of which the finding of the trial court, based upon substantial evidence, is final and binding upon this court.

Conclusion.

Our conclusion is that the court committed no error in denying a writ of ouster and that the judgment below should be affirmed. It is so ordered. All concur.