STATE of Missouri, Plaintiff-Respondent,

v.

Bessie EGAN, Defendant-Appellant.

No. 7316.

Springfield Court of Appeals.

Missouri.

Nov. 17, 1954.

S. W. James, Jr., Jefferson City, Horace T. Robinson, Waynesville, Hamp Rothwell, Vienna, for defendant-appellant.

Wayne W. Waldo, Waynesville, Harold S. Hutchison, Vienna, for plaintiff-respondent.

STONE, Judge.

Defendant, licensed under the Liquor Control Law (Chapter 311) to sell intoxicating liquor in the original package, was charged by information with commission of a misdemeanor by sale of a pint of whisky to one Allen T. Cagle on Sunday, January 18, 1953 (Section 311.290). (All statutory references herein are to RS Mo 1949, V.A.M.S.) She appeals from conviction by a jury, which assessed a fine. Although defendant stated in her brief that jurisdiction on appeal is in this court, her counsel joined with opposing counsel in suggesting, during oral argument, that the cause be transferred to the Supreme Court because "the construction of the Constitution * * * of this state" is involved. V.A.M.S.Const. of 1945, Art. V, § 3. If this appeal is "within the exclusive jurisdiction of the supreme court" [Const. of 1945, Art. V, § 13], the cause should be transferred to that court even though our appellate jurisdiction were not questioned [State v. Plassard, Mo.App., 190 S.W.2d 464(1); State v. Blythe, Mo.App., 186 S.W.2d 55, 56(1); Potashnick Truck Service v. City of Sikeston, Mo.App., 157 S.W.2d 808, 809(1)]; but, our inquiry into this subject must be an independent one, for appellate jurisdiction is not determined and cannot be conferred by stipulation of parties or agreement of counsel [State ex rel. Thompson ex rel. Pugh v. Bright, 298 Mo. 335, 250 S.W. 599, 600 (1); In re Bennett's Estate, Mo., 243 S.W. 769; Dye. v. School Dist. No. 32, Mo.App., 190 S.W.2d 467(1); State v. Sparks, 180 Mo.App. 495, 166 S.W. 642, 643(1)].

The information herein was filed on January 21, 1953. After the case came on for trial on October 7, 1953, and after a jury was duly impaneled and sworn, defendant filed a motion to suppress the pint of whisky alleged to have been sold to Cagle, on the ground that it "was illegally taken * * * from the premises of the defendant and James Egan, her husband, for the reason that the search and seizure thereof were made * * * in violation of the constitutional rights and guarantees of the defendant under the provisions of Section 15 of Article I of the Constitution of Missouri." Following a hearing, the motion to suppress was overruled. We pass without determination the preliminary question as to whether such motion to suppress, filed after the jury had been impaneled and sworn and thus after the trial had begun, came too late.[1] When the pint of whisky, to which the motion to suppress had been directed, was offered in evidence, defendant's counsel then objected on other grounds, primarily "for the reason that it has not been properly identified by the prosecuting witness as being the whisky that he says he bought from Mrs. Egan," but no objection was made on the

---

1. As indicating that defendant's motion to suppress was not timely filed, see Cardenti v. United States, 9 Cir., 24 F.2d 782, 783(1); State v. Conner, 59 Idaho 695, 89 P.2d 197, 201(11); State v. Wansgaard, 46 Idaho 20, 265 P. 671, 672 (2); State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87, 91(3), 103 A.L.R. 339; State v. Cox, Mo., 259 S.W. 1041(1). Contra, Samson v. United States, 1 Cir., 26 F.2d 769, 770(1).

ground that it had been obtained in violation of the defendant's constitutional guaranty against unreasonable search and seizure. Constitutional questions not only must be raised at the earliest opportunity consistent with good pleading and orderly procedure [State v. Lock, 302 Mo. 400, 259 S. W. 116, 125(11)] but also must be kept alive throughout the case by proper objections [State v. Nordseick, Mo.App., 295 S. W. 808, 810(4)] and must be preserved in the motion for new trial [State v. Medley, 360 Mo. 1032, 232 S.W.2d 519, 523(1)]. There being no element of surprise in the offer of the pint of whisky in the instant case, defendant's failure to object to its introduction on the ground that it was obtained by unlawful search and seizure in violation of her constitutional rights "was a waiver of the error, if any, in admitting the evidence." State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, 886–887(13). Assuming that the alleged constitutional question had been timely and properly raised, it ceased to be a live issue in the case when defendant failed to keep it alive in her objections to the evidence when offered, and accordingly no constitutional question has been preserved which would divest this court of appellate jurisdiction. State v. Hepperman, supra, 162 S.W.2d loc. cit. 887. See and compare State v. Powers, 350 Mo. 942, 169 S.W.2d 377, 379(7), and State v. Cox, Mo., 259 S.W. 1041(4).

For still other reasons which will become apparent from a brief statement of the pertinent facts, we are of the opinion that we have appellate jurisdiction of this case. Defendant, Bessie Egan, and her husband, James Egan, resided on the north side of U. S. Highway 66 about 3 miles east of Waynesville in Pulaski County, Missouri. Defendant operated a package liquor store and a grocery store. Her husband operated a garage. The Egans lived in quarters at the rear of the grocery. The liquor store was in a "new building" east of and adjacent to the grocery store. The garage business was conducted in a nearby but separate building. Milford Egan, defendant's son, owned the real estate, including the buildings and the driveway in front or south of them which afforded access to and from Highway 66, but Milford's parents were "occupying the property."

About 2:00 to 2:30 P.M. on Sunday, January 18, 1953, Allen T. Cagle, accompanied by two soldiers, drove to the Egan grocery in Cagle's Ford pickup and parked in front of the grocery. Cagle and his companions entered the grocery store, where, according to the state's evidence, Cagle purchased a pint of whisky and some groceries, all of which were put into the same paper sack and carried to Cagle's pickup. Defendant admitted that she had waited on Cagle that day and had sold him some groceries, but she denied the sale of any whisky to him. As Cagle was preparing to leave in his pickup, the prosecuting attorney and sheriff of Pulaski County drove up and stopped in front of the Egan grocery. The sheriff walked to the driver's side of the pickup and the prosecuting attorney walked to the opposite side. In response to the sheriff's inquiry as to "what he had," Cagle replied that "he had groceries." When the sheriff asked "if I could see," Cagle said "yes" and "turned the sack over" to the sheriff, who found the pint of whisky in the sack with some groceries.

The sheriff had no search warrant or warrant for arrest, and no arrest was made at that time. As defendant urges, it is true that the pint of whisky found in the paper sack was not visible at any time before Cagle "turned the sack over" to the sheriff; that neither Cagle nor his companions had committed a misdemeanor in the presence and view of the sheriff [State v. McBride, 327 Mo. 184, 37 S.W.2d 423, 425(5)]; that the sheriff would have had no reasonable ground for arresting Cagle or his companions [State v. Cuezze, Mo., 249 S.W.2d 373, 376(4); contrast State v. Jonas, Mo., 260 S.W.2d 3, 5(5)]; that discovery of the whisky in the grocery bag was not an incident to a lawful arrest [State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743, 745(2)]; and, that the right of security from unreasonable search and seizure extends to motor vehicles [State v. Jones, 358 Mo. 398, 214 S.W.2d 705, 707(3); State v. Wilkerson, 349 Mo. 205, 159 S.W.2d 794, 798–799 (6)]. But, it by no means follows that de-

*fendant's* personal guaranty against unreasonable search and seizure was infringed.

In the instant case, the search (if, in fact, there was one) was of a motor vehicle owned by Cagle, the pint of whisky in the sack "turned over" to the sheriff was Cagle's property, and defendant neither had nor claimed to have any right, title or interest in or to either the pickup or the whisky. It is clear from the reported cases that, under these circumstances, there is no basis for defendant's complaint that her constitutional rights were violated. State v. Pigg, 312 Mo. 212, 278 S.W. 1030, 1033 (4); Williams v. United States, 10 Cir., 66 F.2d 868, 869(2); Hurwitz v. United States, 8 Cir., 299 F. 449, 453(5), certiorari denied 266 U.S. 613, 45 S.Ct. 95, 69 L.Ed. 468; Nelson v. United States, 8 Cir., 18 F.2d 522, 524(3); Todd v. United States, 5 Cir., 48 F.2d 530, 532(7); Connolly v. Medalie, 2 Cir., 58 F.2d 629, 630(3); People v. Barg, 384 Ill. 172, 51 N.E.2d 168, 171(6); Tacker v. State, 72 Okl.Cr. 72, 113 P.2d 394, 395(3, 4). The right to immunity from unreasonable search and seizure is a personal one; and, even if it were conceded that *Cagle's* personal guaranty against unreasonable search and seizure was infringed— a question which we need not and do not rule [but, see State v. Lee, Mo., 11 S.W.2d 1044, 1045(4); State v. Allen, Mo.App., 251 S.W. 69(2); 47 Am.Jur., Searches and Seizures, Sec. 71, p, 547]—such violation of Cagle's constitutional rights would be of no legal concern to defendant and could not be asserted by her [State v. Rodgers, Mo., 260 S.W.2d 736, 738(1), 739(5); Safarik v. United States, 8 Cir., 62 F.2d 892, 895(1, 2)].

In considering defendant's contention that nevertheless her constitutional rights were violated because the pint of whisky was "seized on the defendant's premises and to be used as evidence against her alone," certain salient facts should be kept in mind. The Egan grocery was open on Sundays—"people generally went there on Sunday to buy groceries." Access to this roadside business was afforded to the general public over the driveway, in which the pickup was parked when Cagle "turned the sack over" to the sheriff, and it is not even suggested by defendant that the prosecuting attorney and sheriff were trespassers when they turned into this open driveway. Not all searches and seizures are within the constitutional prohibition, but only *"unreasonable* searches and seizures" of *"persons, papers, homes and effects"*. Const. of 1945, Art. I, Sec. 15; State v. Watson, 329 Mo. 158, 44 S.W.2d 132, 134 (3). "(I)t is clear that the sheriff did not search defendant's house or any of the buildings adjacent thereto. He did not search the defendant personally, nor did he disturb any of the members of defendant's family." State v. Cobb, 309 Mo. 89, 273 S. W. 736, 739(4). Obviously, there was in the instant case no search of defendant's person, papers, home or effects.

Our Supreme Court long ago pointed out that "A line of cases also hold that though (defendant) be the owner of the premises searched, still those premises must be within the curtilage, and if they are not they do not come within the meaning of the constitutional provision." State v. Fenley, 309 Mo. 520, 275 S.W. 36, 40(7). "Curtilage" is defined as "the inclosed space of ground and buildings immediately surrounding a dwelling house" (Black's Law Dictionary, 4th Ed., p. 460) or as "a yard, courtyard, or piece of ground, included within the fence surrounding a dwelling house" (Webster's New International Dictionary, 2nd Ed., p. 649). Like definitions were approved in State v. Hecox, 83 Mo. 531, 536. And, although in its proper legal signification it may no longer be necessary that the area be fenced or enclosed (see 10 Words and Phrases, Curtilage, p. 712), curtilage "is still a right which goes only with a dwelling house as that term is commonly used and understood" [Powelson v. Lake Placid Co., 281 App.Div. 1054, 121 N.Y.S.2d 139, 140(1)]. See and compare In re Burgoon's Estate, 80 Ohio App. 465, 76 N.E.2d 310, 312; Turknett v. State, 36 Okl.Cr. 401, 254 P. 985, 986(2); DeMouy v. Jepson, 255 Ala. 337, 51 So.2d 506, 510. Certainly, the driveway in front of the Egan grocery, affording public access to this road-

side business, was not within the "curtilage" of defendant's home protected against unreasonable searches and seizures. State v. Cobb, supra, 273 S.W. loc. cit. 739(4); State v. Zugras, 306 Mo. 492, 267 S.W. 804, 806(3).

We recognize that the appellate jurisdiction of the Supreme Court to review a case because a constitutional question is involved does not depend upon the merits or validity of the claim of constitutional right. Elks Investment Co. v. Jones, Mo., 187 S.W. 71, 74(1); Dorrance v. Dorrance, 242 Mo. 625, 148 S.W. 94, 98(2); Schuster v. Weiss, 39 Mo.App. 633, 635. But, it has been long settled that "(r)aising a constitutional question is not a mere matter of form. The question must really exist, and, if it does not exist, it is not raised." Brookline Canning & Packing Co. v. Evans, 238 Mo. 599, 142 S.W. 319, 321 (3); Stegall v. American Pigment & Chemical Co., 263 Mo. 719, 173 S.W. 674, 675(1); State v. Tatman, 312 Mo. 134, 278 S.W. 713, 715. Not every averment of the violation of some constitutional right will confer appellate jurisdiction on the Supreme Court, even though the question raised has not been adjudicated. "There is another requirement * * * that the (constitutional) question raised, though never previously decided, must be substantial and not merely colorable." McManus v. Burrows, 280 Mo. 327, 217 S.W. 512, 515(4, 5). "The issue must possess substance. A sham or colorable constitutional issue lacks the vitality to force jurisdiction" on the Supreme Court. City of St. Louis v. Fitch, 353 Mo. 706, 183 S.W.2d 828, 829(6), and cases there cited.

A claim of violation of a constitutional guaranty may be said to be substantial when, upon preliminary inquiry, the contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses that the contention is so obviously unsubstantial and insufficient, either in fact or in law, as to be plainly without merit and a mere pretense, the claim may be deemed to be merely colorable. Cf. Harrison v. Chamberlin, 271 U.S. 191, 194–195, 46 S.Ct. 467, 70 L.Ed. 897, 900; Alt v. Burt, 6 Cir., 181 F.2d 996, 997(2); Atlanta Flooring & Insulation Co. v. Russell, 5 Cir., 146 F.2d 884, 886(4). Upon the admitted facts in the instant case, we are constrained to conclude that, *even if* it were conceded (contrary to our finding, supra) that defendant's complaint that her constitutional guaranty against unlawful search and seizure had been preserved properly, such alleged constitutional question would not be a substantial one so as to vest appellate jurisdiction in the Supreme Court. It necessarily follows that, in our opinion, defendant's complaint that the court erred in overruling her motion to suppress is wholly without merit.

Defendant's next assignment is that "the court erred in refusing to discharge the jury * * * and to disqualify the prosecuting attorney to try this cause, because of the showing of prejudice on (his) part * * * and his unusual activity in the case and in the trial, which prevented the defendant from having a fair and impartial trial." It was developed in evidence that, during the week prior to January 18, 1953, the prosecuting attorney and sheriff had talked about going to "Devil's Elbow to investigate a killing" in preparation for a preliminary hearing; that, when the prosecuting attorney called the sheriff on Sunday, January 18th, and asked "if I could be ready in a certain time," the sheriff thought "that was the reason he was calling"; that, after picking up the sheriff, the prosecuting attorney drove east on Highway 66 (on the route to "Devil's Elbow") to a point about 300 to 400 yards west of the Egan grocery where the prosecuting attorney first told the sheriff that "we will go by Egan's place" and turned north from the east-bound dual lane of the divided pavement for that purpose; and that, as they were approaching the Egan store, the prosecuting attorney said "There's some fellows coming out of there with some sacks—let's check them."

Defendant argues on appeal that "it is reasonable and fair inference

* * * that the prosecuting attorney did not just happen to meet Cagle at Egan's place"; and, when asked by the trial court during the hearing on the motion to suppress whether "you are going off on the theory that he (Cagle) had a plot and an entrapment planned with the officers to go in there and buy this and turn it over to them," defendant's counsel responded "Yes, I think that is what occurred." However, both the prosecuting attorney and Cagle stated definitely that Cagle's purchase of whisky and the arrival of the officers as Cagle was leaving were not prearranged, and there was no substantial evidence to support a theory of entrapment. State v. Varnon, Mo., 174 S.W.2d 146, 148(7); State v. Drewing, Mo., 245 S.W.2d 874, 875(3). Furthermore, defendant's denial that she had sold whisky to Cagle was inconsistent with a defense of entrapment— a defense "not generally available" anyway "where the statute prohibits the act of selling intoxicating liquor". State v. Varnon, supra, 174 S.W.2d loc. cit. 148(8), and cases there cited.

Without objection by defendant's counsel although the name of the prosecuting attorney had not been endorsed on the information (Section 545.240), the prosecuting attorney took the witness stand during the state's case in chief for brief formal proof on direct examination (his testimony being reported on one page of the transcript) that the pint of whisky taken from Cagle on January 18, 1953, was the same bottle which, with seal unbroken, was delivered subsequently to the laboratory of the Missouri State Highway Patrol for analysis of alcoholic content. The prosecuting attorney appeared in rebuttal to testify solely in impeachment of defendant's husband that, contrary to Egan's prior denial, he had told the prosecuting attorney privately on January 18th that "I admit we have done a little cheating on the side, but if you will forget about this, I promise you it will never happen again." Without detailed discussion of the rigorous cross-examination to which the prosecuting attorney was subjected, it will suffice to say that he stoutly denied any "feeling" against defendant and that, as we view the evidence, defendant's counsel failed to demonstrate any ill will on the part of the prosecuting attorney.

We recognize that a prosecuting attorney is a quasi-judicial officer [State ex rel. Griffin v. Smith, 363 Mo. 1235, 258 S.W.2d 590, 593(1)] who, in the proper discharge of his important and responsible functions, should exercise his sound discretion in good faith, "in accordance with established principles of law, fairly, wisely, and with skill and reason", and "with regard to what is right under the circumstances" [State on Inf. McKittrick v. Wallach, 353 Mo. 312, 182 S.W.2d 313, 319(6), 155 A.L.R. 1]; that, among the duties with which he is charged, is the duty to see that the defendant is accorded a fair trial [State v. Allen, 363 Mo. 467, 251 S.W.2d 659, 662(4); State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, 526–527 (1–3)]; and that, whenever it may appear that the personal interest of the prosecuting attorney in any particular case is such as to indicate that he might be influenced thereby and might not be altogether fair to the defendant in the trial of the case, he should be disqualified and a special prosecutor appointed for that case [Section 56.110; State v. Jones, 306 Mo. 437, 268 S.W. 83, 85(1); State v. Nicholson, Mo.App., 7 S.W.2d 375, 378(8)]. But, a prosecuting attorney also should prosecute vigorously and fearlessly on behalf of the state and, for his willful neglect or failure so to do, he may be held accountable. State on Inf. of McKittrick v. Graves, 346 Mo. 990, 144 S.W.2d 91; State on Inf. McKittrick v. Wymore, 345 Mo. 169, 132 S.W.2d 979, 986(10). There is no factual analogy between this case and the reported cases [State v. Jones, supra; State v. Nicholson, supra] in which the prosecuting attorney should have been disqualified; and, careful review of the record in the instant case leaves us unconvinced that the prosecuting attorney evidenced more than a proper and commendable official interest in vigilant discharge of the duties entrusted to him. Having in mind also that no request that the prosecuting attorney be

disqualified was made prior to or during the course of the trial and that this complaint first was presented in the motion for new trial, we rule this assignment against defendant.

▉ Defendant next asserts that the court erred in refusing to declare a mistrial when certain testimony pointed out in defendant's brief "informed the jury that the defendant was * * * accused of other sales of whisky." As illustrative of the testimony of which defendant complains, when witness McSpadden, one of the soldier companions of Cagle, was asked "What did you do after you got up there (to the Egan grocery)," he replied, "Went inside and bought some groceries and some whisky"; and, when later asked how he (McSpadden) knew that Cagle had paid $3.50 for a pint of whisky, the witness answered, "Because I bought one, too." But, this "record reflects no deliberate and repeated efforts, despite the positive rulings of the court, to cause the jury to consider matters inadmissible in evidence or immaterial matters prejudicial to the defendant" [State v. Rhoden, Mo., 243 S.W. 2d 75, 78(6)]; and, where the questions propounded are proper, the fact that a witness, without prearrangement, gives incompetent or unresponsive answers does not compel discharge of the jury, particularly where, as in the instant case, the court promptly instructs the jury to disregard such answers [State v. Hadley, Mo., 249 S.W.2d 857, 862(8); State v. Walker, Mo.,

46 S.W.2d 569, 570(2); State v. Holmes, 316 Mo. 122, 289 S.W. 904, 906–907(2)]. Declaring a mistrial for alleged misconduct of either witnesses or attorneys during the course of the trial rests largely within the sound discretion of the trial judge; and where, as here, there has been no apparent abuse of that discretion, an appellate court will not interfere. State v. McHarness, Mo., 255 S.W.2d 826, 830(9), certiorari denied, 345 U.S. 977, 73 S.Ct. 1126, 97 L.Ed. 1392; State v. Wilkins, Mo., 100 S.W.2d 889, 896–897(23, 24); State v. Walker, supra.

▉ Having requested no such instruction as she now contends should have been given, defendant's final complaint that the trial court erred in failing to instruct the jury on all essential issues must be denied, for the statute providing that "the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict" [Section 546.-070(4)] does not apply to misdemeanor cases [State v. Levan, Mo.App., 136 S.W.2d 1010, 1014(8); State v. Brown, Mo.App., 293 S.W. 87, 89(2); State v. Hull, Mo. App., 279 S.W. 221, 223(8)].

Defendant, represented by able and resourceful counsel, was accorded a fair trial, and the judgment should be and is affirmed.

McDOWELL, P. J., concurs.