## THE STATE v. J. B. FENLEY, Appellant.

### Division Two, July 14, 1925.

1. **INDICTMENT: Sale of Intoxicating Liquor: Omission of Definitive Words: Proof.** An indictment in the words of the statute, charging that defendant sold "twelve bottles of Jamaica ginger that contained one-half of one per cent of alcohol to F. M. Thompson for beverage purposes," is not defective in failing to state that the ginger contained one-half of one per cent alcohol "by volume" or in omitting the phrase "which are potable or capable of being used as a beverage" (words found in another statute defining intoxicating liquor) or in omitting the phrase "which are fit to use for beverage purposes" (words used in the act of Congress). But notwithstanding the indictment is sufficient without those words, the State is required to prove that the Jamaica ginger sold contained one-half of one per cent alcohol by volume and was potable or capable of being used as a beverage.

2. **INTOXICATING LIQUOR: Amendment of Statute by Act of Congress: Proviso to Section 6602.** The Missouri Constitution declares that the section of a statute as amended shall be set out in full, and therefore the proviso to Section 6602, Revised Statutes 1919, declaring that when intoxicating liquor is hereafter defined in the laws of Congress, "then such definition by Congress shall supersede and take the place of the definitions of said phrases in this section and shall apply to the provisions of this article with the same force and effect as if the same were written herein," is a nullity, and any subsequent definition of "intoxicating liquor" by act of Congress did not have the effect of amending Section 6602. And said proviso is separable from the rest of the section, and it is apparent that it was not the moving cause for the enactment of the section, and therefore with the proviso eliminated there remains a valid statute defining intoxicating liquors.

State v. Fenley.

3. ———: ———: ———: Proof that Liquor Sold Was Fit for Beverage Purposes. In the trial of a defendant charged with selling intoxicating liquor it is not incumbent upon the State to prove that the liquor sold was "fit to use for beverage purposes." Those words are used in the Act of Congress as a part of the definition of intoxicating liquor, by an amendment to the Volstead Law made after the enactment of Section 6602, Revised Statutes 1919, but they are not a part of the law of this State defining the offense, and the void proviso to said Section 6602 did not make them a part of our law, and therefore it is unnecessary to prove that the intoxicating liquors sold were fit for use for beverage purposes.

4. SEARCH WARRANT: Without Order of Court. The clerk of the circuit court has no authority to issue a search warrant without an order of court, and a search warrant issued by the circuit clerk without an order of court is a nullity.

5. ———: To Search the Premises of Another: Used as Evidence against Defendant. The provisions of the Constitution relating to search warrants are for the protection of personal liberty and private property, and a search made under a warrant, which was not directed against defendant, although void because issued without an order of court, was not an invasion of his rights, and he cannot complain that the things discovered by the officer are used at his trial; and a search warrant based on an affidavit stating that a large quantity of intoxicating liquors is stored in a certain woodshed and was there stored by defendant, was not directed against defendant, where the woodshed was not owned by him or in his possession.

6. ———: Protection Is Personal. The protection against unreasonable search and seizure guaranteed by the Constitution of Missouri (Sec. 11, Art. 2) does not extend to a defendant who is neither the owner nor in possession of the premises upon which the contraband or things seized are found.

7. EVIDENCE: Remoteness: Sale of Intoxicating Liquor: Discovery of Bottles. The exclusion on account of remoteness of relevant facts tending to establish the matter at issue rests largely in the discretion of the trial judge; but where defendant is being tried upon a charge of having sold at his store in January intoxicating liquor, to-wit, twelve bottles of Jamaica ginger, testimony that certain Jamaica ginger bottles stored in a woodshed across the street from the store were found in May, and claimed by defendant, relates to an occurrence too remote from the alleged sale to be admissible, where the State makes no attempt to show whether the bottles were deposited in the shed before the sale or continuously deposited there from January until discovered in May, or to connect these circumstantial evidences of the character of the defendant's business with the crime charged.

8. ————: **Other Crimes: No Objection.** If no objection was made to the admission of certain testimony, it cannot be reviewed on appeal, even though it was objectionable because of remoteness or because it tended to show another and distinct crime.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 1087, p. 561, n. 81, 84, 86, p. 562, n. 90; Section 1173, p. 605, n. 16; 17 C. J., Section 3331, p. 56, n. 16. Indictments and Informations, 31 C. J., Section 194, p. 672, n. 47; Section 260, p. 709, n. 30. Intoxicating Liquors, 33 C. J., Section 25, p. 502, n. 86; Section 31, p. 503, n. 35; Section 362, p. 669, n. 43; Section 375, p. 678, n. 35; Section 383, p. 683, n. 14 New; Section 437, p. 721, n. 39; Section 463, p. 736, n. 75; Section 493, p. 753, n. 25; Section 494, p. 754, n. 32. Searches and Seizures, 35 Cyc. p. 1265, n. 6; p. 1266, n. 15. Statutes, 36 Cyc. p. 970, n. 95; p. 976, n. 27; p. 982, n. 56; p. 1060, n. 76.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris*, Judge.

REVERSED AND REMANDED.

*Nick T. Cave* and *Emil P. Rosenberger* for appellant.

(1) The court should have sustained the defendant's motion to quash the search warrant: (a) Sec. 6595, R. S. 1919, as amended by Laws 1921, p. 413, is unconstitutional in this: Said section is violative of Sections 11 and 30, Article 2, of the Constitution of Missouri, and is violative of the fourth and fifth articles and of Section 1 of Article 14 of the Constitution of the United States. Lowry v. Rainwater, 70 Mo. 152; City of St. Louis v. Mo. Pac. Ry. Co., 278 Mo. 205. (b) Section 6595, except by the stretch of a vivid imagination, makes no provisions for the issuance of a search warrant either by the clerk or court. (c) The affidavit upon which the search warrant was issued is insufficient. (2) The indictment is fatally defective: (a) Words of a statute which are descriptive of an offense as part of the statutory definition thereof cannot be omitted from an indictment or information thereunder without rendering the same defective. State v. Viviano, 206 S. W. 235; State v. Miller, 132 Mo. 297; State v. Hesseltine, 130 Mo. 468. (b) The indictment fails to follow the language of the statute. Every fact material to the offense charged

must be alleged in the indictment, and nothing material can be taken by intendment or implication. State v. Hall, 130 Mo. App. 170. (c) The indictment fails to charge the sale was unlawfully made, as in required in careful criminal pleading. (3) When Mrs. Roberts failed to connect the defendant with the matters testified to by her the court should have, on defendant's motion, stricken out her testimony. (4) The testimony of the sheriff and deputy sheriff as to the number of empty Jamaica ginger bottles they found in the shed back of the Atwood Bakery while executing the search warrant was improperly admitted in evidence. (a) The search warrant under which the officers acted should have been quashed on defendant's motion. (b) The search warrant under which the search was made was void and conveyed no authority upon the officers to seize a lot of empty bottles. Intoxicating liquor was what the officers had a right to seize, if anything. (c) The result of this search and the seizure of the empty bottles and the boxes and barrels and vessels in which the same were contained, and the subsequent testimony of the officers, was in effect to compel defendant to furnish damaging and incriminating evidence against himself and defendant was deprived of his rights guaranteed to him under Article 2, Section 23, of the Constitution and of the Fifth Article of the Constitution of the United States. (d) The alleged sale of the Jamaica ginger was made January 19, 1921. The spectacular raid made by the officers under the alleged search warrant was not made until May 18, 1921, four months later than the alleged sale of Jamaica ginger in question. The raid was too remote to throw any light on the alleged sale.

*Jesse W. Barrett,* Attorney-General, and *Wm. L. Vandeventer,* Special Assistant Attorney-General, for respondent.

(1) Under the late rulings of the Supreme Court the search warrant was illegal and void. State v. Owens,

259 S. W. 100; State v. Lock, 259 S. W. 116; State v. Tunnell, 259 S. W. 128; State v. Smith, 262 S. W. 65. (2) The court did not commit error in overruling the motion to quash the search warrant. The testimony on the motion failed to show the premises belonged to appellant; in fact, the testimony showed that they did not belong to him. Objections to an illegal search warrant can only be raised by the owner or person in possession of the premises. Lakes v. Commonwealth, 254 S. W. (Ky.) 908; Bowling v. Commonwealth, 193 Ky. 642; Lusco v. United States, 287 Fed. 69; United States v. Kaplan, 286 Fed. 963; Jones v. United States, 296 Fed. 632; Chicco v. United States, 284 Fed. 434; Haywood v. United States, 268 Fed. 803. (3) The premises searched were not within the curtilage, and the constitutional provision does not apply. United States v. Kaplan, 286 Fed. 975; Brent v. Commonwealth, 194 Ky. 504; United States v. McBride, 287 Fed. 214, 284 Fed. 416; McClannahan v. Chaplain, 116 S. E. (Va.) 495.

WALKER, P. J.—This case was re-assigned to the writer, June 16, 1925. Its final disposition, after it had been re-assigned, was deferred to await the court's ruling in certain other cases, the issues in which were thought at the time of their submission to be the same as involved in the instant case. The final disposition of these cases renders the further delay in the determination of this case unnecessary.

The defendant was charged by indictment preferred by the grand jury of Callaway County, with the sale of intoxicating liquors to one F. M. Thompson, and upon a trial to a jury he was found guilty and his punishment assessed at a fine of three hundred and fifty dollars. From this judgment he appealed to the Kansas City Court of Appeals; and upon a motion filed by counsel for the defendant, alleging that a constitutional question had been timely raised, the case was transferred to this court.

Thompson, the prosecuting witness, testified that he had bought a case of twelve bottles of Jamaica ginger

for beverage purposes from the defendant, for which he paid eight dollars; that he drank two bottles of the liquor, which was slightly intoxicating within a half hour's time. Evidence was introduced showing that Jamaica ginger contains from eighty-five to ninety-five per cent alcohol. Two of the witnesses for the State testified that defendant warned them against testifying before the grand jury; that if they didn't know what they were testifying to there might be trouble. Mrs. Roberts, whose husband had been employed by defendant, testified that six months before this charge was preferred against the defendant she and her husband went to St. Louis and while there bought a cause of Jamaica ginger. The night of their return to Fulton they took the ginger into defendant's store and the latter helped her husband carry it in. That she was the person who had been warned by the defendant not to testify before the grand jury.

When the grand jury had the matter here in issue under consideration the prosecuting attorney made application to the circuit clerk for a warrant authorizing a search for intoxicating liquors in a woodshed belonging to the Attwood Bakery Company in Fulton. This warrant was issued by the clerk, and a search of the premises disclosed that a large number of Jamaica ginger bottles were stored therein. The shed in which they were found was across the street from defendant's place of business and in the rear of the bakery. The prosecuting attorney in making affidavit for the warrant stated that he believed that the defendant or some other person had stored intoxicating liquors in the shed. When the bottles were being taken possession of by the sheriff defendant admitted that they belonged to him and that he had bought many of them from boys who brought them to his store to sell. Other than the assertion of ownership of the empty bottles defendant made no claim to any control over the premises, nor was there any proof to that effect. Defendant did not testify. A druggist who testified in his behalf, gave the component parts of Jamaica ginger and stated the purposes for which it was used. Several

witnesses stated that they had at different times seen boys carrying empty bottles to defendant's store.

I.   The defendant complains of the overruling of his motion to quash the indictment in that it failed to aver that the Jamaica ginger charged to have been sold by the defendant contained one-half of one per cent alcohol by volume and that it was fit for use for beverage purposes.   The charge of the indictment is that J. B. Fenley did then and there sell, to-wit, twelve bottles of Jamaica ginger that contained one-half of one per cent of alcohol to F. M. Thompson for beverage purposes.   The section under which this indictment was drawn reads as follows:   "It shall be unlawful for any person, firm, association or corporation, his, its or their agents or employees, to manufacture, sell, give away or transport intoxicating liquors within, import the same into, or export the same from, the State of Missouri for beverage purposes, except as hereinafter provided."   [Sec. 6588, R. S. 1919.]

*Indictment.*

Intoxicating liquor is thus defined by the statute:

"The phrases, 'intoxicating liquor' or 'intoxicating liquors,' whenever used in this article, shall be construed to mean and include any distilled, malt, spirituous, vinous, fermented or alcoholic liquor, all alcoholic liquids, whether proprietary, patented or not, which contain one-half of one per centum of alcohol by volume and which are potable or capable of being used as a beverage; *provided*, however, that when the above mentioned phrases, 'intoxicating liquor' or 'intoxicating liquors' are hereafter defined in the laws of the United States, then such definition by Congress shall supersede and take the place of the definitions of said phrases in this section and shall apply to the provisions of this article with the same force and effect as if the same were written herein."   [Sec. 6602, R. S. 1919.]

The indictment omits the words "by volume" and the phrase "which are potable or capable of being used as a beverage."   It also omits the words "which are fit

to use for beverage purposes." This latter phrase is contained in the statute designated as the Volstead Law.

It is the contention of the defendant that the Volstead Law upon its adoption superseded Section 6602, supra, and that the omission of the words "by volume" and the words quoted above from the Volstead Act is fatal to the indictment. These words are not found in Section 6588, supra, defining the offense. Section 6602 defines intoxicating liquor as "all alcoholic liquids which . . . contain one-half per centum of alcohol by volume and which are potable and capable of being used as a beverage."

An indictment in the language of the statute is sufficient if the elements of the crime are adequately described. In State v. Bockstruck, 136 Mo. l. c. 351, this court says: "If the ingredients constituting the offense are capable of exact definition without reference to the exception or proviso, then such reference may with safety be omitted, since such matter contained in the exception, etc., is not descriptive of the offense, but only matter of defense to be brought forward by the accused."

Section 6596, Revised Statutes 1919, reads in part: "It shall not be necessary in any affidavit, information or indictment to give the name of the purchaser or to include any defensive negative averments." But it shall be sufficient to state that the act complained of was prohibited and unlawful. The indictment fully complies with these requirements. Under it the State was required to prove that the Jamaica ginger sold contained one-half of one per cent alcohol by volume and was potable or capable of being used as a beverage. The motion to quash was therefore properly overruled.

II. Counsel for appellant, however, argue that the Volstead Act automatically superseded Section 6602, supra, by virtue of the proviso, that there must be proof and that the jury must find that the ginger sold was fit for beverage purposes. If that contention be true and that question is required to be submitted to a jury it would inject a novel issue into the trial of persons charged

with violations of the act. In the view we take of this case, Section 6602 is controlling, as we will presently show, and the words "which are potable or capable of being used as a beverage," require no construction.

The effect of defendant's contention is that under the terms of the proviso of Section 6602, Congress has power to amend that section defining intoxicating liquor, that the Volstead Act did amend it as hereafter indicated.

It has been judicially determined that under Section Two of the Eighteenth Amendment of the Federal Constitution the State has plenary power to prohibit the importation of ardent spirits into the State for any purpose. The power of the State to enact legislation for the enforcement of the amendment is as broad and ample as is that of Congress. [Clarke v. Western Maryland Ry. Co. 242 U. S. 311, 37 Sup. Ct. 180, and cases cited in paragraph four of that opinion.] Our own court has given express approval to this rule of construction. In State v. Graham, 295 Mo. l. c. 705, we held that the Eighteenth Amendment and the Volstead Act did not repeal the laws of this State prohibiting the sale of intoxicating liquors where the same were not inconsistent with the Constitution and Federal legislation.

Section 34 of Article IV of our Constitution declares how a legislative act may be amended. The section as amended must be set out in full. [State v. Chambers, 70 Mo. 625, 628; State ex inf. v. Herring, 208 Mo. 708, 724; 36 Cyc. 970, 1060 et seq.] The claim, therefore, that Section 6602, Revised Statutes 1919, may be amended by incorporating therein subsequent legislation by Congress defining intoxicating liquors was abortive and the proviso of Section 6602 must be held to be a nullity. The proviso is separable. A part of a law may be constitutionally invalid and the remainder valid, where the objectionable part may be properly separated from the other. And this is so although the valid and the invalid portions may be in the same section. [State v. Bockstruck, supra; State ex rel. v. Gordon, 268 Mo. 713; 36 Cyc. 976.] It is apparent that the proviso was not the moving cause for the enactment of the section and the

two parts are not so interwoven as to be interdependent. [State ex rel. v. Nast, 209 Mo. 708 (11).] Whether the Jamaica ginger sold by the defendant was or was not fit for use for beverage purposes, was therefore not an issue in the case.

III. It may be admitted that the search warrant issued by the circuit clerk upon the affidavit of the prosecuting attorney was a nullity. We so ruled in State v. Hyde, 297 Mo. 213, to the effect that under the Search Warrant. statute then in force (Laws 1921, p. 416), which is applicable here, a circuit clerk had no authority to issue a search warrant without an order of court and that a warrant so issued was a nullity.

This warrant, however, although void was not directed against the defendant. Note the affidavit of the prosecuting attorney: ". . . that he verily believes that in the woodshed back of the Attwood Bakery in Fulton, Missouri, a large quantity of intoxicating liquors are stored and which were stored there on Saturday, May 14th, by one J. B. Fenley. . . ."

It should be borne in mind in this connection that the freedom from search and seizure vouchsafed by the Constitution is one for the protection of personal liberty and of private property. Its terms so indicate, viz:

"That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by oath or affirmation reduced to writing." [Mo. Constitution, Art. 2, sec. 11.]

The protecting *aegis* of the organic law being purely personal and the warrant not having been directed against him or his premises his ground of complaint is without foundation. It will be recalled that aside from the specific declaration of the prosecuting attorney, the testimony disclosed neither ownership nor a claim of control by the defendant of the premises sought to be

searched. The utmost contention that can be made in this behalf is that the defendant said to the sheriff that the empty bottles found in the Bakery Company's shed belonged to him. There was, therefore, no invasion of the defendant's rights and on this score he has no ground of complaint. There is no dearth of rulings to sustain this conclusion.

IV. In the case of Jones v. United States, 296 Fed. 632, a similar state of facts existed as in the present case. In that case there were three build-ings on the lot rented by defendant, his res-idence being on the corner. Next to the street was his shop or storehouse, separated from his residence by a fence. Twenty yards behind the shop was the third building. Federal prohibition officers' without a warrant searched the shop and found nothing. They went into the yard behind the store and there discovered a large quantity of empty bottles. They then searched the third house and found three gallons of whisky. The third house was owned by the defend-ant, but rented by him to a man by the name of Schultz. Appellant was charged with possessing intoxicating liquor and convicted. Objection was made to the in-troduction of the evidence, and in ruling thereon the court said:

*Possession and Ownership.*

"Since the defendant disclaimed possession of the house claimed by Schultz, the search of it could not be an invasion of the defendant's constitutional rights."

In Chicco v. United States, 284 Fed. 434, Federal officers had a search warrant for Number 85½ Market Street in the City of Charleston, South Carolina. A search was made of those premises and nothing found. They then demanded from one Hills the keys to Number 85 Market Street, and with their use they entered that place and found a quantity of intoxicating liquor. On the return to 85½ Market Street they found lying on the desk a postal card, a receipt book and a lumber bill fur-nished to the defendant. Defendant was indicted, and before he was arraigned or pleaded to the indictment he filed a petition to suppress the evidence taken because of

the illegality of the search warrant. The appellate court upheld the overruling of the petition on account of insufficiency, but held the evidence obtained through the invalid search warrant inadmissible.

In Lusco v. United States, 287 Fed. 69, the premises of one Ganci were searched without a warrant in which some narcotics were discovered. Ganci and Lusco were arrested. At the trial of the former a motion to suppress the evidence was filed and overruled by the trial court, and such overruling was held error in Ganci v. United States, 287 Fed. 60. Lusco was tried, but did not file the motion to suppress, but objected to the introduction of the evidence. In discussing the question the court said:

"On this record and in view of the testimony, it is too late to raise this question now; but, even if raised, it would be of no service to defendant. The protection of the Fourth Amendment safeguarded Ganci, but the illegal search and seizure as against Ganci cannot be availed of by Lusco."

In United States v. Kaplan, 286 Fed. 963, the court in discussing this proposition said:

"If the name of the person be known, it should be so stated, but, if not possible, a description of him should be given. If, however, the property sought is not in the possession of any one so far as can be ascertained, this should not prevent search and seizure, and it is permissible to recite that the owner of the premises or property is unknown. [United States v. Borkowski (D. C.), 268 Fed. 408.] If at the time of the search and seizure the property be not in the possession of the party complaining, he will not be heard to object. His right of privacy will not have been invaded. [Haywood v. United States, 268 Fed. 795 (C. C. A. Seventh Cir.]"

In Lakes v. Commonwealth, 254 S. W. (Ky.) 908, in discussing evidence sought to be used which had been obtained under an illegal search warrant the court said:

"But, notwithstanding the defective search warrant, and the insufficient affidavit upon which it was based, defendant may not complain of the evidence as to the find-

ing on the premises adjoining his, since the protection of the constitutional provision is extended only to the owner of the wrongfully searched possessions or articles, or the one entitled to the possession of them, and not to an entire stranger who neither owned nor possessed them. [Bowling v. Commonwealth, 193 Ky. 642, 237 S. W. 381.]."

From the foregoing authorities the rule may be deduced that where a person is not in the possession of the premises nor the owner thereof the provisions of Section 11, Article 2, Constitution of Missouri, cannot protect him. A line of cases also holds that though he be the owner of the premises searched, still those premises must be within the curtilage, and if they are not they do not come within the meaning of the constitutional provision. [United States v. Kaplan, 286 Fed. 963, l. c. 975.]

V. However, in addition to the objection to the admission of testimony concerning the search of the shed belonging to the Baking Company under a void warrant, counsel for defendant urged that the acts relating thereto were too remote to authorize their admission in evidence. It appeared that four months had elapsed between the unlawful sale with which the defendant was charged, and the issuance and execution of the search warrant. Numerous precedents might be cited illustrative of the time within which relevant facts tending to establish the matter at issue may or may not be admissible on account of their remoteness, while numerous instances might be cited in which certain testimony has been held inadmissible on this ground. The question of its exclusion, as our own cases hold, rests largely in the discretion of the trial judge. Generally speaking the question of remoteness to authorize the exclusion of testimony should depend upon all of the considerations of the case, including time, the character of the facts sought to be proved, and all of the surrounding circumstances which, in the opinion of the trial court, ought to be considered in the determination of the matter at issue. This is a resume of the reasoning

*Remoteness.*

of the Supreme Court of Connecticut, State v. Kelly, 77 Conn. 266, on this subject which seems to include all of the elements to be taken into consideration in determining this question. Quoting more tersely from the same court: "The essence of remoteness is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in proof of the latter." [State v. Sebastian, 81 Conn. 4.] These are but types of the rulings of the courts of last resort on this question.

The offense at bar was charged to have been committed in January, 1921. It was not until May, 1921, that the bottles claimed by the defendant were found in the bakery shed. Evidently they were placed there after the commission of the offense charged, or their deposit may have been continuous from January until they were discovered. Either theory rests upon conjecture, as the State did not attempt to elucidate this fact and the more immediately connect these circumstantial evidences of the character of the defendant's business with the crime charged. Had this been done we would be loath to hold that the facts were too remote to be admissible. Other proof than the discovery of the bottles not having been offered the contention of the defendant in this behalf is sustained.

The testimony of Mrs. Roberts concerning the transportation from St. Louis and the delivery of a carton of Jamaica ginger to the store of the defendant was subject to objection, not only on account of its remoteness from the date of the offense charged, six months having intervened, but as evidence tending to show the commission of another and a different crime. However, no objection was made to this testimony and it is not for our review.

There was ample evidence introduced on the part of the State to sustain a conviction without attempting to supplement relevant evidence by the introduction of inadmissible testimony. Much as the fact is to be regretted no alternative is left but to reverse and remand the case that it may be tried as here indicated. It is so ordered. All concur.