State of Missouri, Respondent, v. Harrison Baily Rodgers, Roy Ivan Burke, F. S. Moody, and Howard McCormack, Appellant, and Hal McCormack, Intervenor-Appellant, No. 43228—260 S. W. (2d) 736.

Division Two, September 14, 1953.

*Cope & Ponder* for appellants.

248

*John M. Dalton*, Attorney General, *Aubrey R. Hammett, Jr.*, and *Hugh P. Williamson*, Assistant Attorneys General, for respondent.

 BARRETT, C.—The primary purpose of this statutory proceeding in rem was to declare a tractor-trailer and 368 cases of whisky of the value of $17,046.00 contraband; have the property sold and the proceeds paid into the general revenue fund. V.A.M.S., Secs. 311.830, 311.840; State v. Ward, 361 Mo. 1236, 239 S. W. (2) 313. On the 4th day of October 1950 agents of the Department of Liquor Control and a member of the State Highway Patrol seized the tractor-trailer and its cargo of liquor and the Supervisor of Liquor Control instituted this action in which he alleged that Harrison Baily Rodgers, Roy Ivan Burke, F. S. Moody and Howard McCormack were transporting the whisky in violation of the laws of Missouri, a felony (V.A.M.S., Sec 311.460), and that the tractor-trailer and its cargo were, therefore, contraband and subject to forfeiture and sale. The supervisor's petition alleged that the transportation of the liquor was illegal in that there was no previous authorization in writing by the consignee for the shipment; that the bill of lading or memorandum

250

accompanying the cargo did not bear the name of a consignor authorized to ship liquor into Oklahoma, or the name of a consignee who had a legal right to receive the liquor in Oklahoma; and, that the named defendants did not have the required transporter's permit from the Department of Liquor Control authorizing them to transport liquor through Missouri over a designated route. V.A.M.S., Secs. 311.390, 311.420, 311.440, 311.450.

Rodgers was the driver of the truck and Burke was accompanying him on at least a part of the trip across Missouri and, according to one witness, was the agent or representative of F. S. Moody of St. Louis, Oklahoma. Howard McCormack is a resident of Oklahoma City, the principal stockholder and manager of Howard McCormack, Incorporated, a trucking company, the lessee of the tractor and trailer and Rodgers' employer. According to Howard McCormack, the corporation was transporting the liquor on the usual basis of a common carrier. F. S. Moody was said by Howard McCormack to be the "liquor broker" who ordered and procured the cargo of whisky from the Southern Wholesale Liquor Company of Cairo, Illinois. These named individual defendants were served with process by mail and all of them, except F. S. Moody, filed answers and a joint motion to suppress evidence, and all of them, except Moody, appeared in court in person, were represented by counsel, and testified in the proceedings. At the conclusion of all the proceedings the court overruled the joint motion to suppress evidence, found that the liquor was being transported through Missouri in violation of the laws of Missouri, declared the liquor contraband and ordered it sold. Neither the truck driver, nor Burke, nor Howard McCormack claimed any interest in the cargo of whisky. There was no personal judgment against any of these individual defendants and none of them have appealed, except Howard McCormack, and of course, we are not concerned with whether their rights were violated, or with whether the court erred in any respect as to them in the trial of this proceeding. U. S. v. De Vasto, 52 F. (2) 26, 28-29.

The Universal C. I. T. Credit Corporation and L. G. Nation, being without knowledge of the illegal use of the tractor and trailer, intervened and claimed them under a conditional sales contract and a chattel mortage in which E. G. McCormack of Nicoma Park, Oklahoma, was the conditional sales purchaser and mortgagor. Upon the hearing of the intervening petitions, in which E. G. McCormack was made an additional, and answering, party defendant, the court decreed that the intervenors were the owners of the tractor and trailer and entitled to their possession and no one has appealed from or contests the validity of that phase of the judgment.

There has been no motion to dismiss the appeal of Howard McCormack, but it is indeed difficult to understand how he is aggrieved by the judgment or why he could or would prosecute an appeal from

any part of the judgment. As we have said, there was no personal judgment against him and there was no judgment against his property or his employee. He claims to have procured the· "whiskey broker" and to have paid the broker on behalf of another, but he does not claim to own or have any interest in the whisky, and he does not own or have any interest in the tractor and trailer. The corporate trucking company was not a party to these proceedings and Howard McCormack as the principal stockholder, director and managing officer of the corporation could not complain of an illegal search and seizure of the corporation's leased tractor and trailer or of the seizure of a cargo of whisky in which he had no interest. U. S. v. De Vasto, supra; State v. Morris, (Mo.) 279 S. W. 141, 143. Thus, the issues upon this appeal are plainly limited, in the first place, to another intervenor, Hal McCormack, who has appealed from the entire judgment.

 The questions briefed and argued by the intervening appellant and the state are (a) whether the search and seizure of the whisky, without a search warrant, was unreasonable and consequently whether the motion to suppress should have been sustained; (b) whether the court erred in overruling the intervenor's motion to dismiss and deny the supervisor's petition to declare the liquor contraband, and (c) whether the court erred in finding against Hal McCormack upon the merits of his intervening petition in which he claimed to be the innocent owner of the whisky and entitled to its possession. To further delimit the issues and problems of this appeal it may be noted that we are not concerned here with property "contraband" in the sense that it may not be the subject of ownership. United States v. Sischo, 262 Fed. 1001. Under the statute any owner of the liquor innocent and ignorant of its illegal use may intervene and claim the property (V.A.M.S., Sec. 311.840 (4); State ex rel. Wahl v. Riley, (Mo. App.) 276 S. W. 884), and we assume that he could also raise in this proceeding in rem the reasonableness and legality of the search and seizure. Cornelius, Search and Seizure, Sec. 427, p. 818. Missouri may reasonably regulate the transportation of liquor through the state and the Liquor Control Act, in the respects complained of, is not unconstitutional as an undue burden upon interstate commerce. Annotation 138 A. L. R. 1150; State v. Ward, supra; Duckworth v. Arkansas, 314 U. S. 390, 62 S. Ct. 311, 86 L. ed. 294; Carter v. Virginia, 321 U. S. 131, 64 S. Ct. 464, 88 L. ed. 605. All the parties, the individual defendants who did not appeal and the one who has no right to appeal, as well as the intervenor, admit that they had not made application for a permit to transport the cargo of whisky through Missouri, had not paid the nominal license fee or posted bond, and, unlike the transporter in State v. Ward, supra, did not have the required permit and so there can be no question but that the liquor was being transported in violation of the act. V.A.M.S., Secs. 311.420, 311.440, 311.460, 311.830. Consequently we need not be concerned with the state's failure to

properly plead the laws of Oklahoma and Nevada, and we are not confronted with the question of whether an intended shipment of liquor into Oklahoma in violation of its laws is an offense punishable in Missouri or a sufficient and appropriate reason for a forfeiture of the property under Missouri law. Duckworth v. Arkansas, 314 U. S., l.c. 392, 62 S. Ct., l.c. 312, 86 L. ed., l.c. 296; 22 C. J. S., Sec. 28, p. 83; State v. Ward, supra.

But aside from these delimiting factors and the fact that this appeal concerns but one person, Hal McCormack, the questions involved are further simplified and precisely limited by the resolution of one determinative issue and that is whether Hal McCormack is in fact the owner of the whisky. If he is not in point of fact the owner of and has no interest in the whisky, as the court has found upon his intervening petition, he has no protective rights and could not, of course, complain of the fact that there had been an illegal search and seizure of the whisky, or that it had been declared contraband and forfeited to the state at the instigation of the liquor supervisor. State v. Fenley, 309 Mo. 520, 275 S. W. 36; State v. Askew, 331 Mo. 684, 688, 56 S. W. (2) 52, 54; State v. Morris, supra; Grainger v. U. S., 158 F. (2) 236, 237; Graham v. U. S., 15 F. (2) 740; U. S. v. De Vasto, supra; 79 C. J. S., Sec. 52, p. 811.

The petition to declare the property contraband was filed on October 4th, 1950. Rodgers, Burke and Howard McCormack filed their answers on the 1st day of December 1950, and on that date Hal McCormack of North Las Vegas, Nevada, doing business as "Club Arrowhead," filed an application for leave to intervene in the proceeding on the ground that "he is now and at all times mentioned in said petition the owner of said liquor, which fact can be shown and proved; * * *." On January 9th, 1951, Hal, a croupier by profession, filed his intervening petition in which he alleged that he was the bona fide purchaser and owner of the liquor, that it was consigned to him at his place of business, "Club Arrowhead," to be sold at retail, and that he was innocent and without knowledge of its being illegally transported through Missouri. V.A.M.S., Sec 311.840(3) (4). He also alleged that the seizure of the liquor was without a search warrant, without probable cause and unreasonable, and that the Liquor Control Act, in authorizing a search and seizure, violated Missouri's constitutional guaranty against unreasonable searches and seizures (Const. Mo., Art. 1, Sec. 15) and was, therefore, unconstitutional (State v. Owens, 302 Mo. 348, 358, 259 S. W. 100, 101), and, in addition was an undue burden on interstate commerce. He prayed, therefore, that the court make an order releasing the property to him as owner, and that the supervisor's petition be dismissed.

The state did not file an answer, reply or any other response to the intervening petition, apparently on the assumption that the procedure provided in the Liquor Control Act constitutes a code unto itself and

since it does not provide for a responsive pleading, none is required, as the proceeding is not governed by the Civil Code of Procedure. This argument is made despite the fact that the Liquor Control Act provides, as to the hearing of the petition to forfeit, that "said action shall be heard by the court without a jury and shall be conducted, except as otherwise in this chapter provided, as other cases under the code of civil procedure of the state of Missouri." V.A.M.S., Sec. 311.840(1). But, whether required or not, the state, in this instance, was not in default for failure to respond to the intervening petition so as to deprive the court of power to render judgment. The state did appear in court, by counsel, in opposition to the intervening petition and the intervening petition, against the court's repeated admonition, was tried first, before a hearing of the motion to suppress and a trial of the state's petition, and it "was heard upon the evidence" without a motion by the intervenor for judgment on the pleadings and he is now in no position to claim that his substantial rights were infringed by the state's failure to respond to his petition. Roden v. Helm, 192 Mo. 71, 90 S. W. 798; Wright v. Cobb, (Mo.) 229 S. W. 171.

As we have said, the court found that Hal was not the owner of the whisky, and the meritorious and decisive question in this court tried case is whether there is evidence and proof to sustain the issue or fact as found by the court, because in the absence of evidence there could be no legal basis for the court's finding as to the fact. Boggess v. Cunningham's Estate, (Mo. App.) 207 S. W. (2) 814. This does not mean, however, that either the trial court, or this court on appeal, is bound to credulously accept an inconsistent, fanciful, dead-pan narration as the truth and proof of the essential fact at issue. The trial court was the judge of the credibility of the witnesses and of the weight to be given their testimony and it was the trial court's province to weigh the evidence and determine its legal effect. Buford v. Moore, (Mo.) 177 S. W. 865, 868-869. The trial court's judgment may not be based upon mere speculation and conjecture, but this does not mean that the essential issue or fact found must be based upon affirmative testimony, it may be found by reasoning upon the evidence and inferring from a fact or from evidence that a certain fact existed or was true. Van Brock v. First National Bank, 349 Mo. 425, 431, 161 S. W. (2) 258, 260-261. The ownership of personal property may be a mixed question of law and fact (42 Am. Jur., Sec. 41, p. 219) but Hal McCormack, having intervened and asserted that he was the purchaser and innocent owner of the whisky, "which fact can be shown and proved," had the burden of proving the fact of his ownership by the preponderance of the evidence (73 C. J. S., Sec. 19, p. 214) and that burden is not sustained in either the trial court or this court on a trial anew if based upon conflicting, incredible testimony. Tillman v. Melton, 350 Mo. 155, 161, 165 S. W. (2) 684, 687; Noble v. Missouri Ins. Co., (Mo. App.) 204 S. W. (2) 446; Duncan v. Gage, (Mo. App.)

250 S. W. 647; Goodman .v. Nichols, 238 Mo. App. 802, 188 S. W. (2) 666; Commercial Credit Co. v. Interstate Securities Co., (Mo. App.) 197 S. W. (2) 1000.

Hal is a croupier by profession and at the date of the trial was so employed at a salary of $600 a month. He had once been in the tavern business at Searchlight, Nevada, but had sold the tavern in 1947 ▊▊▊▊ and had not been engaged in the liquor business since that date. As to whether he was engaged in the liquor business in September and October 1950 he said, "Not actually engaged, but I had my licenses in preparation for the beginning of the business." He said that he was planning to engage in both the wholesale and retail liquor business and indicative of his intention he produced the following documentary evidence: a quarterly license, dated October 2, 1950, from the City of North Las Vegas to conduct a tavern, "Club Arrowhead," at 2435 N. Main Street; a special stamp tax for a retail liquor dealer to Club Arrowhead from the United States Collector for Nevada, and upon which is printed in large letters "This Is (Not) A Tax Receipt—*Not A License*"; and a wholesale liquor dealer's "Special Tax Stamp" upon which is printed the words "This Is A Tax Receipt—Not A License." With this explanatory background and in proof of his ownership of the liquor he said that when his cousin, Howard McCormack, was in Las Vegas, he made arrangements with him "to buy me a load back in this part of the country" and he gave Howard a list of the whisky he desired and $17,000 in cash to pay for it. Howard was in the trucking business and Hal left it to him to transport the whisky to Nevada. He also offered in evidence "Exhibit 1" which the transcript recites is "an *invoice* on Southern Wholesale Liquor Company *stationery, together with two attached sheets * * *.*" Both documents list the 368 cases of liquor,. one by brands and the other by case serial numbers, set forth in the state's petition. At the top of the first sheet, the letterhead, appears the following, all italics supplied:

"SOUTHERN WHOLESALE LIQUOR CO.
Beer, Whiskies, Wines, Gins, Cordials

*1611 Com'l Ave.*
F. S. Moody *Phone 3070*
St. Louis, Okla. Cairo, Illinois

*Reconsigned* to: Hal McCormack
 Arrowhead Club
 North Las Vagas, Nev."

On one of the sheets is "Inv No. 3865" and on another sheet, the one listing the liquor by case serial numbers, appears "Invoice No. 3866—Sold to Hal McCormack—Arrowhead Club 1036 Okey Blvd. Las Vegas, Nev."

Howard McCormack testified that when he was in Las Vegas his cousin, Hal, gave him $17,000 or $18,000 in cash, he brought back $30,000 in cash, and he made arrangements through F. S. Moody of St. Louis, Oklahoma, to purchase the cargo of liquor for Hal. When his driver, Rodgers, called from Cairo and notified him that the cargo of liquor had been loaded he gave Moody, in Oklahoma, the $17,000 in cash. The following is his dead-pan narration of the transaction: "Well, Hal had had a bar called the Searchlight, out at Searchlight Nevada, which is a little ways out of Las Vegas, and he had been tending bar and running it. In the meantime he disposed of it and sold it and had come back to Las Vegas and was working there and he suggested to me that it was about the time it looked like merchandise, whiskey, was real scarce, and he didn't know whether he could get it or not, and said he would like to open up another bar, and tavern, and asked me if I thought I could get him some connection where he could get some merchandise. It was pretty hard to get and I told him I was sure that I could, and he told me here is about what I would like to have, and if you can make the arrangements, you can have the transportation on it and so I made the next arrangements to buy it, and routed the closest truck we had to it. * * * I made arrangements with Moody, F. S. Moody. * * * He lives at St. Louis, Oklahoma, and I think ▮▮▮ he has got a home in St. Louis; and a home at Norman, Oklahoma. Q. What is his business, if you know, Mr. McCormack, or was at that time? A. Well, he was in the whiskey business. He used to operate a couple wholesale liquor companies in Illinois, from the best I could find out, not in Illinois, but in Arkansas, at Lakeville, Arkansas, and one at Fort Smith, or something another, but he is still in the whiskey business when in St. Louis. Q. Is he a broker or does he run a place of his own? A. Well now, I don't know whether he runs a place of his own or not. I haven't never saw it, I know he is a broker in the whiskey business and properly licensed." And so Howard McCormack bought the whisky "for the Arrowhead Club in Las Vegas, Nevada" and the club was operated by Hal McCormack. This is the testimony and evidence favorable to the intervenor's claim of ownership and standing alone, is sufficient to prove the fact, if accepted. 20 Am. Jur., Sec. 772, p. 644; 73 C.J.S., Sec. 19, p. 214.

But the favorable evidence and inferences on behalf of the intervenor do not stand alone. Not only was Hal McCormack "not actually engaged" in the liquor business in Nevada, he had no place of business and the "Club Arrowhead" was not in fact in existence. He said, on cross-examination, that Club Arrowhead "consists of my license and property, which I was going to put the building on." The license from the City of North Las Vegas and the receipts for the stamp taxes were to "McCormack, Hal, Club Arrowhead 2435-7 No. Main Street," and on the letterhead of the wholesale liquor company the

liquor was "Reconsigned to Hal McCormack Arrowhead Club." 2435-7, North Main Street in North Las Vegas, Nevada, was a vacant lot in September and October 1950 and it was vacant when this case was tried in December 1951. Upon cross-examination Hal admitted that he did not have an importer's license from the State of Nevada and he did not have a wholesaler's license from the State of Nevada. In these circumstances, assuming that he had a retailer's license, he could not legally import liquor into Nevada, and he could only legally purchase liquor from a Nevada wholesaler. Laws of Nevada, 1947, p. 645; Laws of Nevada, 1945, p. 371.

These matters, inconsistent with any rational reason for a Nevada retailer's purchasing a cargo of whisky in Illinois, through the agency of an Oklahoma trucking operator and an Oklahoma "whiskey broker," and the indisposition to readily accept the favorable narrative of the cousins, may bear more upon the credibility of the witnesses and the weight and persuasiveness of their testimony. But if these matters do not directly support the court's finding of nonownership, there is another factor which bears directly upon the tangible indicia of ownership and that is the evidence and the fact concerning the invoices, the bills of lading or the memoranda of shipment—the only written evidence of title and ownership. When the liquor was seized a liquor control agent found state's "Exhibit A" underneath the mattress of the relief driver's sleeping compartment. This exhibit is the *yellow* invoice, number 3865, from the Southern Wholesale Liquor Company, from which the state obtained the itemized list of liquor. Attached to the invoice was a *pink* slip showing the case serial numbers of the liquor and as to brands, number of cases and case serial numbers state's "Exhibit A" and intervenor's "Exhibit 1" are identical. There was also a sealed letter from Southern Wholesale Liquor Company to F. S. Moody. The truck driver says that he concealed "Exhibit 1" in the bosom of his shirt and the liquor control agents did not find it. When "Exhibit A" was finally received in evidence the court made this statement (italics supplied), which succinctly explains, in part, the differences between "Exhibit A" and "Exhibit 1": "Exhibit A, (it) contains the same information as contained in Exhibit 1, which has been offered and received in evidence on behalf of the intervenor with one exception. Exhibit 1, *instead of having an invoice printed form, contains a listing* of 368 cs. which the court assumes refers to cases, and a description of the various cases and a total cost *on* ▮▮▮ *Southern Wholesale Liquor Co. letterhead,* and shows the name, F. S. Moody, St. Louis, Oklahoma, *and typed in it, on it,* is reconsigned to Hal McCormack, Arrowhead Club, North Las Vegas, Nevada, pickup by this truck. *Exhibit A does not have that reconsignment statement on it. The record can also show that Exhibit 1,* introduced by the Intervenor *appears to be either a duplicate made by a typewriter* as to cases and prices and descriptions

*and the typing of F. S. Moody, St. Louis, Oklahoma, a different type, a different type at least than that used in reconsigned to Hal McCormack, pickup by truck."*

Mr. Jack S. Rubin, the owner and manager of Southern Wholesale Liquor Company, was sitting in the courtroom and the court called him as a witness, and his testimony sheds further light upon these documents. Of state's "Exhibit A" he said, "Well, that is one of my invoices billing a load of whiskey to F. S. Moody, St. Louis, Oklahoma, and also all the serial numbers." His printed invoice forms consist of white, green, yellow and pink copies, the white being the original which he retained and the green containing the serial numbers which he also retained. The yellow and pink copies were given to the truck driver. Of "Exhibit 1" Mr. Rubin said, "I don't know anything about this." He said it was "a piece of stationery which says Southern Wholesale Liquor Company." His place of business was 1611 Commercial Avenue, Cairo, and his phone number was 3070 as stated on intervenor's "Exhibit 1" but on "Exhibit 1" the words "2032 Sycamore St." had been stricken out by X's on a typewriter and the words "1611 Commercial Avenue" typed in, and the telephone number "2880" had been typed out and "3070" typed in. 2032 Sycamore Street and telephone number 2880 were the telephone number and business address of Mr. Rubin's brother from whom he had purchased the Southern Wholesale Liquor Company in 1950. In addition, without objection, one of the liquor control agents said, "Mr. Burke stated that the whiskey was for Moody; that he had made five or six trips to Cairo, Illinois, hauling liquor for F. S. Moody at St. Louis, Oklahoma, but was using a different truck."

In all the circumstances of this record, whether trying the case anew in this court or in passing upon the sufficiency of the evidence to support the trial court's finding, it may not be said that Hal McCormack sustained his burden of proving that he was in fact the owner of this cargo of liquor. On the contrary, the compelling inference from all the evidence is that he was not the purchaser and did not own the whisky, as the trial court found. This supported finding of fact as to him is determinative of all other issues upon this appeal. Accordingly the appeal of Howard McCormack is dismissed and the judgment as to Hal McCormack is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.