**STATE of Missouri, Respondent,**

v.

**Victoria GREEN, Appellant.**

**No. 45124.**

Supreme Court of Missouri.

Division No. 2.

July 9, 1956.

————◆————

Douglas W. Greene, Springfield, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant was convicted of the crime of grand larceny and her punishment was assessed at three years in the state penitentiary. The information on which she was convicted charged her with stealing three suits of women's clothing of the total value of $287.85, being the property of B. M. Buxbaum, Inc., doing business as Paris Shop, Springfield, Missouri. On this appeal the defendant charges that the court erred in overruling her motion to suppress the use in evidence of the three women's suits and also that the closing argument of the prosecuting attorney was prejudicially erroneous in certain particulars.

Five officers of the Springfield Police Department testified at the hearing on the motion to suppress, held prior to the trial. They were patrolmen Gabriel Newman and Charles H. Slemp, Assistant Chief of Police Sam Robards, Detective Sergeant Charles S. Tettleton and Detective Bob Lee.

Chief Robards received a call from a clerk at the Paris Shop stating that some women's suits had been stolen and that the three colored women who were suspected had been seen getting into an automobile being driven by a colored man. This information, together with the description of the automobile and the license number, were put on the police radio for a pickup of the car and its occupants for investigation of shoplifting. Newman and Slemp and Officer Roy L. Brooks received the message and found the automobile, a two-tone 1955 Ford bearing a Michigan license and occupied by four colored people, at St. Louis and Glenstone. They accosted the driver of the automobile, a man named Edward Byrd, and told him they would have to take him to headquarters for questioning. Byrd was searched to see if he had a weapon such as a knife or gun and was then put in the police car with Brooks and Newman and taken to police headquarters. Officer Slemp followed driving the Ford automobile with the three women in it. At the station the women were taken into the detective's room and the officers requested Byrd's permission to search the automobile Byrd had been driving. Byrd was in charge and said he was responsible for the car which belonged to Lee Andrew Burton of Detroit. Byrd consented to the search and was present when it was conducted.

In the automobile were found a wardrobe bag equipped with a zipper and some suitcases. These were taken into the police station and opened. They were found to contain women's clothing, including the three women's suits claimed to have been stolen from the Paris Shop. The wardrobe bag and suitcases were opened by Lee and Tettleton. The three suits stolen from the Paris Shop were found in the wardrobe bag, which was of plastic material and about two and one-half feet long. The evidence did not disclose which of the women owned the wardrobe bag or the various suitcases. No search warrant was obtained for the automobile, the zippered wardrobe bag or any of the suitcases. The permission of none of the women was sought or obtained before the wardrobe bag and suitcases were opened.

After hearing arguments of counsel the court overruled defendant's motion to sup-

press the evidence. Officer Brooks and the five other police officers also testified at the trial and the evidence regarding the search was the same in all material respects as at the preliminary hearing. The three suits were admitted in evidence over defendant's objection. We find no error in the court's rulings with respect to the use of this evidence.

■ The constitutional guaranty against unreasonable searches and seizures is a personal one, and only the owner or the person in possession of the premises or property has any legal standing to complain of its violation. Article I, § 15, Constitution of Missouri, 1945, V.A.M.S.; State v. Rodgers, 364 Mo. 247, 260 S.W.2d 736, 739 [5]; State ex rel. McDonald v. Frankenhoff, 344 Mo. 188, 125 S.W.2d 816, 818 [5]; State v. Askew, 331 Mo. 684, 56 S.W. 2d 52, 54 [5]; State v. Egan, Mo.App., 272 S.W.2d 719, 724 [6, 7].

■ The defendant has no standing to complain of the search of the Ford automobile. It was being driven by Edward Byrd presumably with the consent of the owner. Byrd was in possession and charge of it. He made no objection to the search; in fact, he consented and was present when the search was conducted. By consenting to the search Byrd effectively waived his constitutional right of immunity to search without a warrant if such right otherwise existed. State v. Smith, 357 Mo. 467, 209 S.W.2d 138, 140 [2]; State v. Burney, 346 Mo. 859, 143 S.W.2d 273, 274 [1]; State v. Bliss, Mo., 18 S.W.2d 509, 510 [1]. On the front seat of the automobile the police officers found a wardrobe bag containing the three suits stolen from the Paris Shop, so we do not need to give further consideration to the three suitcases. Nor do we need to determine whether this wardrobe bag is protected property within the meaning of the constitutional provision.

■ Defendant's motion sought to suppress the use in evidence of the three suits and other evidence obtained in the search of the automobile "and in the search of suitcases and personal property of said defendant taken from said automobile." Defendant failed to prove, however, that she was either the owner or the person entitled to the possession of the wardrobe bag and its contents. Such proof is an essential prerequisite to establishing the right of immunity from an unreasonable search and seizure. State v. Pigg, 312 Mo. 212, 278 S.W. 1030, 1033 [4]; State v. Fenley, 309 Mo. 520, 275 S.W. 36, 39–40 [6, 7]; State v. Egan, Mo.App., 272 S.W. 2d 719, 724 [6, 7].

■ Defendant can derive no comfort from the fact that the bag may have belonged to one of her companions because, as stated in 79 C.J.S., Searches and Seizures, § 59, p. 816, "If the premises or possessions of one codefendant, coindictee, or co-conspirator are searched illegally, he alone may complain, the illegal search not being a violation of the rights of the others."

■■ The trial court's ruling was further justified on the ground that the search of the wardrobe bag was a reasonable incident of a lawful arrest. The information furnished the police officers that a crime had been committed and the description of the suspected persons constituted reasonable grounds to believe that the defendant was one of those who had committed the crime and to arrest her. State v. Raines, 339 Mo. 884, 98 S.W.2d 580, 584 [5]; State v. Bailey, 320 Mo. 271, 8 S.W.2d 57, 59 [4]; Silver v. State, 110 Tex.Cr.R. 512, 8 S.W. 2d 144, 60 A.L.R. 290.

"It is fundamental that a search may be made without a warrant in connection with a lawful arrest, and that incriminating articles connected with the crime, as its fruits, * * * may be seized." 47 Am. Jur. 515, Art. 19. See also State v. Raines, 339 Mo. 884, 98 S.W.2d 580, 584 [6].

■ Defendant contends further that the arrest and the search must be one trans-

action and contemporaneous, citing among other authorities State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743. In the Carenza case defendant was arrested in his home and a search was commenced which resulted in the finding of a pistol more than ten hours later. The opinion discloses that all during that time some member of the police force was continuously searching. The question here involved is whether there was a lapse between the arrest and the search that would preclude the search being an incident of the arrest. Delaying the search of the automobile and the bags until arrival at police headquarters would not be an abandonment or interruption that would prevent the search being an incident of the arrest since they were in the continuous possession of the police department. We have carefully considered the evidence in this regard and there is no showing that the defendant's rights were disregarded or prejudiced in admitting the suits in evidence.

Additional portions of the evidence will be helpful in considering defendant's objections to the remarks of the prosecuting attorney in his closing argument.

Employees of the Paris Shop testified that the defendant and her two women companions came into the store during the noon hour when some of the employees were at lunch. While one was looking at and trying on dresses the others wandered about the store. After being in the store about thirty minutes, one of the women bought an $8 dress on sale and all of them left. Shortly thereafter a customer came in to see again a suit she had looked at earlier in the day and the suit could not be found. The defendant and her two companions were suspected. Two of the employees began to search the streets in the neighborhood and saw the three women get into a two-tone Ford automobile driven by a colored man. The license number of the car and the other information was given to the police and the defendant and her companions were taken into custody as heretofore stated.

In her signed statement introduced in evidence defendant related that she left Detroit, Michigan, on February 15, 1955, in company with Claudie Lovett, Gloria Roberts and Edward Byrd. They drove to Chicago and then Springfield, Missouri. At about noontime on February 17th they left the motel where they had spent the night. The statement then continues:

"After leaving the Motel we came down town and told the driver, Edward Byrd, to park the car on the Public Square. We three ladies got out of the car and went to visit some of the Department Stores.

"We went to the Paris Shop, which I have been told is located on St. Louis Street, where Gloria was to try on some clothing while Claudie and myself would take some suits off the racks and place them in our bloomers. I would judge we got about six or seven suits at this location. From this shop we went back to our car where we would remove the clothing and leave it in the car and we would then start out for another store.

"We decided to stop for a while. We were going to eat and had Edward Byrd take us East on St. Louis Street. We drove out to the intersection of Glenstone and St. Louis Streets where Edward Byrd drove East on St. Louis Street, turned down a short street headed north. We stopped here and packed the merchandise we took from the stores into the suitcases we had. While there we also pulled off the store tags from this clothing. We threw these tags away.

"Just as we were about to leave a Police Patrol car stopped us. We were then brought to Police Headquarters and questioned in regard to the clothing we had in our possession.

"I am fully aware of the fact that I was taking this clothing yesterday, that it is shoplifting, * * *."

During the closing argument of the prosecuting attorney the following occurred:

"Mr. Sturgis: * * * This woman has been brought right up to the very Bar of Justice and the final step is for you to take. Everything that these clerks and salesladies did to protect themselves, everything that the police has done, everything that I have done, and Mr. Francka has done, and Judge White has done, will be wasted unless you, the jury, do your duty and take this final step.

"Mr. Greene: Now, Your Honor, I object to this kind of argument and ask that it be stricken and that he be reprimanded—that everything you have done—I wasn't aware that you were a prosecuting official of this county. I think it is very improper.

"The Court: Well, the objection is overruled.

"Mr. Sturgis: Ladies and gentlemen, here is what I want you to do. I want you to find Victoria Green guilty of Grand Larceny and assess her punishment at five years in the state penitentiary. And I want you to do that so that the word will go out along the grapevine to the underworld that Springfield, Missouri, is not the place to come to ply their trade. We don't want those people in our city, coming in here from Detroit, Michigan,—

"Mr. Greene: Now, Your Honor, I object to that argument as being improper and inflammatory, about regional differences; the fact that this woman is from some other town shouldn't be considered by the jury in their deliberations.

"The Court: The objection is overruled.

"Mr. Greene: I ask that the jury be ordered to disregard that statement and the jury be discharged by reason of inflammatory statements by the Prosecuting Attorney.

"The Court: Overruled."

The defendant first contends that the prosecuting attorney committed error in arguing that all that the persons named, including the trial judge, had done would be wasted if the jury did not do their duty and take the final step. In support of this assignment defendant cites State v. Stegner, 276 Mo. 427, 207 S.W. 826, 828, 831, a prosecution for forgery in which it was held that prejudicial error resulted from the prosecutor telling the jury in effect that if the trial court had not been satisfied that a finding of guilty was authorized he would have " 'grabbed the prosecutor and the principal witness and thrown them out of the window.' "

Whether or not the remarks of counsel are improper, and whether or not improper remarks are prejudicial under the facts of the particular case and necessitate a reprimand of counsel or a discharge of the jury are matters which rest very largely within the trial court's discretion, and the appellate court will not interfere unless the record shows an abuse of such discretion to the appellant's prejudice. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588 [11]; State v. Sanchez, Mo., 269 S.W.2d 46, 48 [2]; State v. Lorts, Mo., 269 S.W.2d 88, 92 [9].

We cannot agree with defendant's contention that the prosecuting attorney's argument "clearly" indicated or inferred that the trial court thought the defendant was guilty or it would not have gone through the "empty gesture of having a trial." Prosecuting officials should exercise great care to avoid trading on the name of the trial judge whose function it is to preside as an impartial arbiter. As shown by the Stegner case this can lead to prejudicial error. However, we do not think the remarks in the case at bar had the meaning or effect for which defendant contends and we find no abuse of the trial court's discretion in its ruling on the objection.

Defendant further contends that the argument of the prosecuting attorney was erroneous in that it constituted an appeal to

regional differences and inferred that the defendant was a member of the underworld who had come to Springfield from Detroit with the avowed purpose of committing larceny. Defendant cites State v. Clancy, 225 Mo. 654, 125 S.W. 458, in which the prosecuting attorney's reference, not supported by the evidence, to the defendant as a "police character" was held to be prejudicially erroneous. Defendant's objection at the trial did not include the reference to the underworld but we do not consider such remarks erroneous under the circumstances. The argument does not charge the defendant with being a member of the underworld but stresses the importance of a conviction and adequate punishment as a deterrent to the commission of offenses by others.

The prosecutor has the right to urge the jury to uphold the law and to draw inferences as to the effect of the jury's failure to do so. State v. Carter, 345 Mo. 74, 131 S.W.2d 546, 548 [5, 6]; State v. Nichols, 327 Mo. 1237, 39 S.W.2d 777, 780; State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, 143.

The prosecuting attorney requested five years' imprisonment and the jury assessed three years as the punishment. The evidence of guilt was convincing. It appears from the evidence, and especially the defendant's statement, that this was more than a casual episode. The activities of the defendant and her companions indicated a well planned foray adeptly executed. In this state of the evidence we cannot say that the reference to the defendant's coming from Detroit erroneously prejudiced the defendant either as to the finding of guilt or the punishment assessed. See State v. Miller, 359 Mo. 327, 221 S.W. 2d 724, 727.

The judgment should be affirmed and it is so ordered.

All concur.