**FLORIDA REALTY, INC., Appellant,**

v.

**Honorable James C. KIRKPATRICK, Secretary of State, and Honorable Nathaniel B. Rieger, Commissioner of Securities, Respondents.**

No. 57848.

Supreme Court of Missouri, Division No. 2.

March 11, 1974.

Motion for Rehearing or for Transfer to Court en Banc for Modification of Court's Opinion Denied May 13, 1974.

---

Richard W. Miller, George T. O'Laughlin, Miller & O'Laughlin, P. C., Kansas City, for appellant.

John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for defendants-respondents.

HOUSER, Commissioner.

Florida Realty, Inc. brought this action against the Commissioner of Securities and

the Secretary of State to obtain a judgment

(1) declaring that in engaging in its business of offering for sale and selling homesites in Florida plaintiff is not engaged in the business of selling securities and therefore is not amenable to the provisions of the Missouri Uniform Securities Act, Chapter 409, RSMo 1969, V.A.M.S.; not subject to the jurisdiction of the commissioner; not required to comply with rules, regulations or orders issued by the commissioner; or that plaintiff is exempt from the provisions of the Act; or, in the alternative, that the classifications provided in § 409.401(*l*) of the Act are arbitrary, unreasonable, discriminatory and for other reasons unconstitutional, invalid and unenforceable, and

(2) granting injunctive relief.

Tried to the court the circuit judge made findings of fact and conclusions of law and entered judgment adverse to plaintiff's contentions both as to the applicability to and enforceability of the Act against plaintiff and as to the constitutionality of the classifications in § 409.401(*l*). Plaintiff has appealed. We have jurisdiction because this case involves the construction of the Constitutions of the United States and of Missouri.

The owner of the land is General Development Corporation, hereinafter "General." Acting as General's agent Florida Realty, Inc., hereinafter "plaintiff," advertises, publicizes, offers to sell and sells to Missouri residents homesites located in the State of Florida. When an agreement is reached with a purchaser the latter is required to sign an instrument in writing denominated "Acceptance & Guarantee Purchase Agreement" (hereinafter "A & G") by which he agrees to purchase from General a specified lot or lots at a designated place in Florida. Appearing on the face of the instrument is the purchase price, amount of initial payment, balance due, payment plan (annual, semiannual or monthly), the amount of the monthly payment and a guarantee by General to pay the taxes, convey title, and provide a policy of title insurance and complete street paving adjacent to the property, without additional charge as per the conditions of the agreement. Ten conditions of purchase are provided for on the reverse side of the A & G, the principal of which are the following: A warranty deed and a title policy are to be delivered upon payment in full of regular installments, but if the purchaser prepays the entire amount the obligation to deliver the warranty deed is not accelerated. Possession and use of the property is retained in General until the purchase price is paid in full *and* warranty deed delivered. Upon default in a payment due General may terminate the agreement and retain all payments. General is to pay all taxes on the property during the term of the agreement, or until the recording of the A & G, or until delivery of the deed, whichever occurs first. The agreement is to be effective and binding upon General when it has been signed by the purchaser and by General at its Miami, Florida office.

Some sales of homesites are for cash but usually the A & G provides for the completion of purchase by payments on an installment basis over a period of approximately eight years.

Section 409.401(*l*), Laws 1967, p. 611, provides as follows: "(*l*) 'Security' means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; *or any contract or bond for the sale of any interest in real estate on deferred payments or on installment plans when such real estate is not situated in this state or in any state adjoining this state;*

or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 'Security' does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or for some other specified period." (Our italics.)

Plaintiff's first point is that the court misconstrued the italicized words of § 409.-401(*l*) by holding that plaintiff is engaged in the business of offering to sell and selling *securities* within the meaning of the section, without a showing that the transactions have the attributes of "investment contracts," or involve any of the instruments listed under the definition of "Security" in the section, because the italicized language applies to the debt obligation instrument (A & G) arising out of the purchase of real estate, and neither the real estate nor the A & G is at any time negotiated, sold, discounted or otherwise dealt with by plaintiff or by General. In short, the first question is whether plaintiff's *modus operandi* constitutes offering to sell or selling a security within the italicized language. Plaintiff claims that it is selling *land;* that the purpose of the italicized language is not to regulate land sales but to regulate the sale of debt securities created by the sale of land on deferred payments outside Missouri and adjoining states; that an A & G is a specialized type of debt security which, only after execution by both parties, is subject to regulation as a security, but which cannot be sold to anyone in the course of a sale of land since a sale within the meaning of § 409.-301[1] refers to something in existence at the time of the sale and not to something created by or resulting from the sale.

Generally it may be said that the purpose of Blue Sky Laws is to protect the public against the imposition upon the public of unsubstantial schemes and the securities based upon them. Hall v. Geiger-Jones Co., 242 U.S. 539, 550, 37 S.Ct. 217, 61 L. Ed. 480 (1917). We believe that the salutary purpose of including the italicized language in § 409.401(*l*) was to avoid the evils referred to in Statutes of California 1963, "Out-of-State Land Promotions Act," Vol. 2, Chapter 1819, § 2, p. 3755, which, adapted to Missouri, would read as follows:

> "The offering of subdivision land to residents of the State of Missouri which is situated in distant and inaccessible areas of the United States and foreign countries where standards of subdivision development have not been established by local authorities, * * *, has created an opportunity for the exploitation of Missouri residents. Our citizens who are denied immediate access to examine the property are placed in the position of an investor in securities where the risks are clearly beyond the control of the individual and dependent upon the managers of the capital investment or the developers of the real estate promotion. The Legislature therefore finds that this type of an investment requires the protection and supervision of laws designed to protect security investors."

Considering the evidence in this case in the light of the obvious legislative purpose we are of the opinion that plaintiff's operation comes within the ambit of the italicized language of § 409.401(*l*); that plaintiff is subject to the jurisdiction of the Commissioner of Securities and to the rules, regulations and orders properly issued by that office; that it was the intention of the legislature to regulate the issuance, sale and purchase of written evidences of debt employed in certain speci-

---

[1]. "It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security

or transaction is exempted under section 409.402."

fied types of land sales and to recognize the kinship between offerings of contracts such as A & G and offerings of other more conventional securities such as common stocks [2]; that such offerings were intended to be brought within the controls of the Act by legislatively declaring that the instruments employed in such transactions are "securities"; that an A & G is a "security" within the meaning of the italicized language [3]; that the Act, taken as a whole, comprehends not only sales and purchases of such securities to third parties *after* execution, issuance and delivery (as plaintiff argues), but also embraces *offers* by sellers' agents to prospective purchasers *to sell* such a contract (see §§ 409.101 and 409.-301 RSMo 1969, V.A.M.S.); that giving the statutory definition of a security the liberal construction to which by the weight of authority it is entitled, Securities and Exchange Commission v. Joiner Leasing Corporation, 320 U.S. 344, 353, 64 S.Ct. 120, 88 L.Ed. 88 (1943), plaintiff's solicitation of a prospective purchaser to sign an A & G is an offer to sell a contract or bond on an installment plan for the sale of an interest in real estate not situate in this state or in any state adjoining this state, within the meaning of the italicized language; that certain specified types of out-of-state land sales to Missouri residents are subject to the abuses (fraud, deception, misrepresentation, high-pressure selling tactics) which the Act was intended to prevent in connection with offerings, sales and purchases of more conventional types of securities; that the italicized language in § 409.401(*l*) gives the commissioner jurisdiction to regulate operations such as those conducted by plaintiff without a showing that the instruments employed have all of the attributes of conventional investment contracts (a separate category of securities under § 409.401), and that the italicized language is not a catch-all generalization under the rule of ejusdem generis (as plaintiff contends) but is a separate, distinct and independent category of security.

Plaintiff's second point is that the Act and the commissioner's rules deny plaintiff equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States and grant special rights, privileges and immunities to its competitors in violation of Article I, § 13 and Article III, § 40, par. (28) of the Constitution of Missouri, V.A.M.S.

■ Plaintiff contends that the classification of a deferred payment sale of land lying outside Missouri and states adjoining Missouri as a regulated security, while allowing a deferred payment sale of land lying in Missouri and states adjoining Missouri to go unregulated, is arbitrary, artificial and unreasonable. This contention is sustained, and the words "or in any state adjoining this state" are declared unconstitutional. There is good reason for making a distinction between the sales of lands within the State of Missouri and lands located in faraway places. A Missouri resident might reasonably be expected to have the ability and opportunity to personally view lands lying within the state of his residence or in close proximity thereto and therefore have the opportunity to inspect the land at first hand and make inquiries with reference thereto in the vicinity, whereas it might be difficult or impossible for the prospective purchaser to travel long distances for these purposes. It would be reasonable to require the regu-

2. See Paulson, "The Great Land Hustle," (1972), "[Eight] states take the admirable position that subdivision offerings sold as speculative investments should be regulated like sales of stocks, bonds and other securities because they resemble security offerings and many people invest their savings in them. In some states land sales people must be licensed as securities salespeople."

3. Other states which classify out-of-state subdivision offerings as *securities* include: Kansas, K.S.A. § 17-1252(j); Maine, Maine R.S., Title 32, Ch. 13, § 751; Ohio, Ohio Rev.Code Anno., §§ 1707.01-1707.45; Tennessee, Tenn. Code Anno., Title 48, Ch. 16, § 48-1602(J); Vermont, Vt.Stats.Anno., Title 9, Ch. 131, § 4202; Washington, Rev.Code of Wash., Ch. 2120, Securities Act, § 21.20.005.

lation of security agreements arising out of offers to sell or sales of faraway lands, as a protection against imposition upon residents of this State who are prospective purchasers. To fix the perimeter of such protection at the outer limits of the eight states surrounding Missouri, however, is arbitrary, unreasonable and artificial. The way the subsection is written there is no reasonable relation between the distances from points in Missouri to points in adjoining states, and points in Missouri to points in next adjoining states. For instance, such a rule would require regulation of security agreements relating to land sales in Batesville in northern Mississippi, 150 miles distant from a prospective purchaser in Hayti, Missouri, but would not require regulation of such securities involving a sale of land in Crawford in northwestern Nebraska, 830 miles distant from Hayti. A security agreement with respect to a sale of land in Sioux Falls, South Dakota, 236 miles from Craig, Missouri, would be regulated, whereas that involved in a sale of land at Bristol in eastern Tennessee, 740 miles from Craig, would be free from regulation.

The language now held unconstitutional and unenforceable is severable. When separated from the rest of the italicized language it leaves a law in all respects complete and susceptible of constitutional enforcement. Both by the provisions of the general statute, § 1.140, RSMo 1969, V.A. M.S., and § 409.417 of the Missouri Uniform Securities Act[4] we are authorized to rule thus, for it is reasonable to presume that the legislature would have enacted the valid provisions without the void words if it had known that the exscinded portion was invalid, since the valid provisions are not essentially and inseparably connected with and dependent upon the void provision. The words stricken do not enter into the life of the Act itself, are not essential to its being and may be disregarded, leaving the rest to remain in force. See State ex rel. Enright v. Connett, 475 S.W.2d 78, 81 [1] (Mo. banc 1972).

■ Plaintiff also contends that the classification based upon the distinction between cash sales and deferred payments sales is a denial of equal protection of the laws and otherwise invalid. We disagree. A sale for cash to a Missouri resident of land lying outside Missouri may logically and reasonably be a proper subject for regulation by Missouri in a land sales regulation act, but this subject matter would be inappropriate in an act regulating *securities*. A cash sale ordinarily results in the execution of a warranty deed or other conveyance transferring title to the land at the time the consideration is paid. A cash sale could not in any sense be construed as a security transaction, such as that represented by an A & G, which is a contractual agreement providing for the eventual transfer of land, years later, after the completion of payment of the full purchase price, the expiration of the agreed time period, and the completion of agreed-to improvements. There is a reasonable basis for regulating A & Gs as securities, and in not regulating cash sales which by their very nature are not "securities." No constitutional provision is violated by this differentiation. The Act treats alike all persons similarly situated. The classification is practical and rests on grounds relevant to the achievement of the objective of the legislature. The distinction between cash sales and deferred payment sales is logical.

■ Plaintiff's third point, that the definition of a security in § 409.401(*l*) of the Act unreasonably discriminates against it by burdening plaintiff's rights to engage in interstate commerce by the sale in Missouri of interests in Florida real estate, contrary to the provisions of Article I,

4. "If any provision of this Act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable." Laws 1967, p. 637, effective January 1, 1968 (prior to the occurrence of the facts out of which this case arose).

Section 8 of the United States Constitution, is overruled. The Act is a legitimate and reasonable exercise of the reserved police power of the State of Missouri in respect of a matter of local concern. Congress not having exercised its authority in this field has left this State free to impose an indirect or incidental burden upon interstate commerce to this extent. Bank of Bernie v. Blades, 215 Mo.App. 459, 247 S. W. 806, 807 (Mo.App.1923); Merrick v. N. W. Halsey & Co., 242 U.S. 568, 37 S.Ct. 227, 61 L.Ed. 498 (1917); Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1917); Auslen v. Thompson, 38 Cal.App.2d 204, 101 P.2d 136 (1940); Wrigley Pharmaceutical Co. v. Cameron, 16 F.2d 290 (D.C.Pa.1926). In Head v. New Mexico Board of Examiners, 374 U. S. 424, 83 S.Ct. 1759, 10 L.Ed. 983 (1963), the constitutionality of a state statute prohibiting advertising by the quotation of prices or terms for the sale of eyeglasses was challenged on the ground that it imposed an undue burden on interstate commerce. In upholding the statute, and ruling that a state law may not be struck down on a mere showing that its administration affects interstate commerce in some way, the United States Supreme Court said, 374 U. S. 1. c. 428, 83 S.Ct. at 1762: "In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when 'conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.'" See also Borden Company v. Thomason, 353 S.W.2d 735 (Mo. banc 1962), holding that Missouri's Unfair Milk Sales Practices Act does not unlawfully burden interstate commerce, and State v. Rodgers, 364 Mo. 247, 260 S. W.2d 736 (1953), holding that Missouri may reasonably regulate the transportation of liquor through the state and the Liquor Control Act is not unconstitutional as an undue burden upon interstate commerce.

■ Plaintiff's fourth point is that even if its transactions could be deemed sales of "securities," which it denies, such "securities" are exempt from §§ 409.301 [1] and 409.403 [5] because of the provisions of § 409.402(a)(8) which, in addition to exempting therefrom any security listed on the New York Stock Exchange,[6] exempts "any other security of the same issuer which is of senior or substantially equal rank, * * *." Plaintiff claims that its A & G is a security of senior or substantially equal rank as its common stock. Section 409.402(d), Laws 1967, p. 630, provides that "in any proceeding under this Act, the burden of proving an exemption or an exception from a definition is upon the person claiming it." Plaintiff's burden of proving the exemption has not been met. Plaintiff has not demonstrated that the A & G transaction involves a security of senior or substantially equal rank as the listed common stock of General. Plaintiff makes its contention on the basis of an opinion of the Attorney General of Missouri rendered January 21, 1943, holding that a contract selling an interest in an oil lease, guaranteeing that starting on a named date a test well would be drilled to a certain depth, was a security senior to the capital stock of the seller, exempt from registration with the Commissioner of Securities. The capital stock of the issuer

5. "The Commissioner may by rule or order require the filing of any prospectus, pamphlet, circular, form letter, advertisement, or other sales literature or advertising communication addressed or intended for distribution to prospective investors, including clients or prospective clients of an investment adviser, unless the security or transaction is exempted by section 409.402." Laws of Mo.1967, p. 630.

6. The common stock of General Development Corporation is listed on the New York Stock Exchange.

was listed on an approved stock exchange. It was reasoned that the obligation to drill the test well had to be performed before stockholders were entitled to receive any of the assets of the corporation by reason of their being stockholders. Section 409.-402(b) now specifically excludes such transactions from exemption, and the attorney general's opinion has been withdrawn. Plaintiff has failed to prove that holders of A & G agreements would participate ahead of stockholders in the assets remaining after payment of debts and expenses. The Bankruptcy Act, 11 U.S. Code Anno. § 110(b), allows the trustee in bankruptcy to assume or *reject* any executory contract. Decisions of the federal courts such as In re New York Investors Mutual Group, Inc., 143 F. Supp. 51 (S.D.N.Y.1956), deny the right of a purchaser of a contract similar to A & G to specific performance against the trustee in bankruptcy, and uphold the latter's right to reject or assume such an executory contract "so as to achieve the overriding purpose of the bankruptcy law to secure an equitable distribution of the assets of the bankrupt." 143 F.Supp. l. c. 54. And see In re Philadelphia Penn Worsted Company, 278 F.2d 661 (3rd Cir. 1960). Furthermore, the word "security" as used in the Act is to be employed as defined in § 409.401, "unless the context otherwise requires." The context patently requires otherwise in this connection, for the simple reason that to ascribe to the word "security" in the exemption section the meaning plaintiff would give it (thereby excluding A & G transactions from the operation of the Act) would completely nullify the legislature's purpose in regulating this type of activity. We read the exemption provided for in § 409.402(a)(8) in the light of the rule that a negation in or exception to a statute will be construed so as to avoid nullifying or restricting its apparent principal purpose and the positive provisions made to carry it out, "and no conflict will be found unless the same is clear and inescapable * * *." 82 C.J.S. Statutes §

382 a., p. 890. Exceptions in a statute should be strictly construed. City of Nevada v. Bastow, 328 S.W.2d 45 (Mo.App. 1959). The exemption provision may not reasonably be construed to cover A & G transactions.

The judgment of the circuit court is amended and modified by striking from the italicized language the words "or in any state adjoining this state" for the reason that this clause is unconstitutional; the judgment as thus modified is affirmed, and the cause is remanded to the circuit court for the entry of an order amending the judgment to conform with this opinion.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.