Dear Mr. Mustoe:
This opinion is in response to your questions asking:
 (1) Can the Board of Trustees which administers The Public School Retirement System of Missouri and The Non-Teacher School Employee Retirement System of Missouri legally place funds of the Systems in direct equity ownership of real property for the purpose of producing income?
 (2) Can the Board of Trustees which administers The Public School Retirement System of Missouri and The Non-Teacher School Employee Retirement System of Missouri legally place funds of the Systems in pooled real estate investment funds for the purpose of producing income?
The Public School Retirement System of Missouri is organized pursuant to Sections 169.010 to 169.140, RSMo 1978 and Supp. 1982. The Nonteacher School Employee Retirement System of Missouri is organized pursuant to Sections 169.600 to 169.710, RSMo 1978 and Supp. 1982. Both systems are administered by the same board of trustees. Section 169.610.2, RSMo 1978.
Section 169.040.2, RSMo 1978, which is applicable to The Public School Retirement System of Missouri, states:
 2. The board shall invest all funds under its control which are in excess of a safe operating balance. The investment shall be made only in the following classes of securities:
(1) Bonds or other obligations of the United States;
(2) Bonds guaranteed by the United States;
 (3) Tenant-purchase loans which are secured by fully insured mortgages as provided for in the act of Congress known as the "Farmers Home Administration Act of 1946" as amended (7 U.S.C.A. § 1001 et seq.);
 (4) Bonds or notes secured by mortgages or deeds of trust guaranteed or insured by the Federal Housing Administrator, or debentures issued by such administrator, under the terms of an act of Congress of the United States of June 27, 1934, entitled the "National Housing Act" as heretofore or hereafter amended (12 U.S.C.A. § 1701 et seq.);
(5) Bonds of the state of Missouri;
 (6) Bonds of a city, county or school district of the state of Missouri;
 (7) Accounts of any savings and loan association chartered by the United States of America or any state which are insured by the Federal Savings and Loan Insurance Corporation;
 (8) Any securities as permitted by laws of Missouri relating to the investment of the capital, reserve and surplus funds of life insurance companies or casualty insurance companies organized under the laws of Missouri.
[Emphasis added.]
Section 169.630.2, RSMo 1978, which is applicable to The Nonteacher School Employee Retirement System of Missouri, states:
 2. The board shall invest all funds under its control which are in excess of a safe operating balance. The investment shall be made only in securities authorized for investment by section 169.040.
The issues involved in your first question are (1) can life or casualty insurance companies invest their capital, reserve and surplus funds in direct equity ownership of real property for investment purposes, and (2) if the answer to question (1) above is in the affirmative, are the instruments evidencing this direct equity ownership, e.g., a contract of sale and warranty deed, "securities" for purposes of Sections 169.040.2(8) and 169.630.2, RSMo 1978.
Section 375.330.1(7), RSMo Supp. 1982, states:
 1. No insurance company formed under the laws of this state shall be permitted to purchase, hold or convey real estate, excepting for the purpose and in the manner herein set forth, to wit:
* * *
 (7) Such real estate, or any interest therein, as may be acquired or held by it by purchase, lease or otherwise, as an investment for the production of income, which real estate or interest therein may thereafter be held, improved, developed, maintained, managed, leased, sold or conveyed by it as real estate necessary and proper for carrying on its legitimate business. [Emphasis added.]
See also Section 376.300.1(11), RSMo Supp. 1982.
Under Section 375.330.1(7), RSMo Supp. 1982, insurance companies may acquire real estate or any interest therein as an investment for the production of income.
The issue then turns to whether the documents evidencing the land transfer, e.g., a contract of sale and warranty deed, are "securities" for purposes of Sections 169.040.2(8) and 169.630.2, RSMo 1978. The General Assembly has not provided a definition of the word "security," as used in these statutes, but has provided definitions of the word "security" in other statutes.[1] In FloridaRealty, Inc., v. Kirkpatrick, 509 S.W.2d 114 (Mo. 1974), Florida Realty, Inc., proposed to act as agent for General Development Corporation, the owner of certain Florida land, to sell homesites in Florida to Missouri residents. These land sales were evidenced by an instrument denominated Acceptance Guarantee Purchase Agreement (hereinafter "A G"). The A G provided for an "installment" sale of land whereby General Development Corporation retained possession and use of the property until the purchase price was paid in full and the warranty deed was delivered to the purchaser.
In holding that installment contracts or deferred payment plans were a security for purposes of Section 409.401(1), as enacted by S.B. 99, 1967 Mo. Laws 611, the court distinguished documents evidencing an installment purchase from a direct cash sale by stating at 509 S.W.2d at 119:
 A cash sale ordinarily results in the execution of a warranty deed or other conveyance transferring title to the land at the time the consideration is paid. A cash sale could not in any sense be construed as a security transaction, such as that represented by an A G, which is a contractual agreement providing for the eventual transfer of land, years later, after the completion of payment of the full purchase price, the expiration of the agreed time period, and the completion of agreed-to improvements. There is a reasonable basis for regulating A G's as securities, and in not regulating cash sales which by their very nature are not "securities." [Emphasis added.]
Accordingly, the documents evidencing a cash sale of land cannot be considered a "security."
The second question asked involves pooled real estate investment funds. It is our information that the type of pooled real estate investment funds contemplated are accounts held by insurance companies. The investor purchases units in this account pursuant to contract, and the insurance company invests the moneys in this account in a diversified portfolio of real estate. The investor may redeem his units at certain specified times, and any profit or loss on the account is shared on a pro-rated basis based on the number of units owned.
In answering this question, we again engage in a two-part analysis to determine (1) whether life or casualty insurance companies can invest their capital, reserve and surplus funds in pooled real estate investment funds offered by insurance companies, and (2) if the answer to (1) above is in the affirmative, whether the contracts evidencing the investment in the real estate investment fund are a "security" for purposes of Section169.040.2(8) and 160.630.2, RSMo 1978.
Section 376.307, RSMo Supp. 1982, states:
 1. Notwithstanding any direct or implied prohibitions in chapter 375 or 376, RSMo, the capital, reserve and surplus funds of all life insurance companies of whatever kind and character organized or doing business under chapter 375 or 376, RSMo, may be invested in any investments which do not otherwise qualify under any other provision of chapter 375 or 376, RSMo, provided, however, the investments authorized by this section are not eligible for deposit with the division of insurance, department of consumer affairs, regulation and licensing and shall be subject to all the limitations set forth in subsection 2.
 2. No such life insurance company shall invest in such investments in an amount in excess of the following limitations, to be based upon its admitted assets, capital and surplus as shown in its last annual statement preceding the date of the acquisition of such investment, all as filed with the director of the division of insurance of the state of Missouri:
 (1) The aggregate amount of all such investments under this section shall not exceed the lesser of (a) eight percent of its admitted assets or (b) the amount of its capital and surplus in excess of nine hundred thousand dollars; and
 (2) The amount of any one such investment under this section shall not exceed one percent of its admitted assets.
 3. If, subsequent to its acquisition hereunder, any such investment shall become specifically authorized or permitted under any other section contained in chapter 375 or 376, RSMo, any such company may thereafter consider such investment as held under such other applicable section and not under this section.
Finding no specific reference to life insurance company investments in pooled real estate investment funds, we conclude that Section 376.307, RSMo Supp. 1982, applies and that life insurance companies may invest in such pooled real estate investment funds, provided that the limitations in subsection 2 of that statute are met. We understand that "admitted" assets are merely the assets of the retirement system.
We also believe the contracts evidencing an investment in pooled real estate investment funds are "investment contracts," so as to qualify as "securities." See Section 409.401(1), RSMo 1978, quoted at note 1, supra.
CONCLUSIONS
It is the opinion of this office that the Board of Trustees that administers The Public School Retirement System of Missouri and The Non-Teacher School Employee Retirement System of Missouri may not invest funds of these systems in direct equity ownership of real property for the purpose of producing income, and that such board may invest funds of these systems in pooled real estate investment funds for the purpose of producing income.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] Section 400.8-102(1)(a)(i) to (iv), RSMo 1978, states:
(1) In this article unless the context otherwise requires
(a) A "security" is an instrument which
(i) is issued in bearer or registered form; and
 (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and
 (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and
 (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer. [Emphasis in original.]
Section 409.401(1), RSMo 1978, states:
 When used in this act, unless the context otherwise requires:
* * *
 (1) "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; limited partnership interest; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or any contract or bond for the sale of any interest in real estate on deferred payments or on installment plans when such real estate is not situated in this state or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. "Security"
does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or for some other specified period. [Emphasis added in part.]